CHELSEA DYE HOUSE AND LAUNDRY COMPANY *vs.* COMMONWEALTH.

Suffolk.    March 22, 1895. — October 16, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Land Damages — Metropolitan Sewerage Act — " Taking."*

If the Metropolitan Sewerage Commissioners, under Sts. 1889, c. 439, and 1890, c. 270, take " the right to carry and conduct under " a highway in a city, " and therein to construct, operate, and forever maintain an underground main sewer," a person whose property is injured by the temporary drying up of a pond, which is his source of water supply on his land in the vicinity, caused by the work of constructing the sewer, the water returning to the pond after the work is finished, cannot maintain a petition for an assessment of damages, under § 1 of St. 1890.

PETITION for an assessment of damages occasioned to the petitioner's property in Chelsea by the laying out and constructing of a sewer by the Metropolitan Sewerage Commissioners, under Sts. 1889, c. 439, and 1890, c. 270. The case was submitted to the Superior Court, and, after judgment for the petitioner, to this court on appeal, upon agreed facts, in substance as follows.

The commissioners, on August 17, 1891, filed in the registry of deeds a description setting forth that they had taken "the right to carry and conduct under the following described lands, and therein to construct, operate, and forever maintain an underground main sewer, . . . to wit, that part of Second Street in Chelsea," describing it.

The petitioner was a duly organized and existing corporation, and on or about July 10, 1891, it became the owner of certain property on Auburn, Spruce, Arlington, and Williams Streets, in Chelsea, for the purpose of operating a laundry which was situated thereon.

On a vacant lot of the petitioner's land, separated from the laundry buildings by a public street called Spruce Street, was a pond of water, fed by springs from undisclosed underground sources. This pond had been used in connection with the laundry buildings, for laundry purposes, by the petitioner and its predecessors in title for a period of over forty years, and had never failed to furnish a sufficient supply of water for the laundry during the last twenty-five years, except when the city of Chelsea, some years previously, constructed a sewer in Spruce Street, which temporarily dried it up. This pond was considered by the petitioner, when purchasing, to be a valuable part of the property.

The petitioner, after purchasing the premises, made large repairs, and commenced a laundry business, for which such a water supply was very important.

On or about October 15, 1891, the pond, which the petitioner was using in the daily prosecution of its business, suddenly became dry, and the supply was entirely cut off, by reason of the work of the employees of persons who had contracted with the Metropolitan Sewerage Commissioners in constructing and laying a sewer under and by virtue of the above named statutes. The petitioner's business was interrupted, and it was put to large expense in providing a fresh supply of water, by driven wells and otherwise.

The parties did not agree as to the amount of the damage to the petitioner, whose contention was that the peculiar quality of the water made it indispensable ; while the respondent contended that the city water, with which the building was

connected, was equally desirable and available for laundry purposes.

After the work upon the sewer in that vicinity was finished, the supply returned again, and filled the petitioner's pond. The drying up of the pond and the cutting off of the water therefrom was not due to any negligent conduct of the work by the Metropolitan Sewerage Commissioners, or by their agents, contractors, or employees, but was a necessary consequence of the construction of the sewer, which lowered the water in many wells in the vicinity.

Second Street, through which the sewer was laid, was long before the petitioner purchased its laundry, and has ever since remained, a public highway of the city of Chelsea, and it was the laying of the sewer in that street, and the pumping necessary to keep the sewer trench free from water while the digging was going on for some months after October 15, 1891, which cut off the underground supply from the pond and caused it to become dry.

The land upon which the pond is situated does not abut upon Second Street, nor upon any land or highway through which the sewer was laid, and the portion of the petitioner's land nearest to the sewer is upon Auburn Street, which is parallel with and at least two hundred and sixty-five feet distant from Second Street, or any other point of the sewer; and other land, owned by private individuals, is situated between the petitioner's land and the sewer.

If, upon the above facts, the petitioner was entitled to recover, judgment was to be entered for it in the sum of $3,000, with interest from October 15, 1891; otherwise, judgment was to be entered for the respondent.

The case was argued at the bar in March, 1895, and afterwards was submitted on the briefs to all the judges.

*W. D. Turner,* for the Commonwealth.

*E. E. Blodgett,* for the petitioner.

HOLMES, J. The petitioner seeks to recover for the temporary drying up of its pond caused by the work of constructing a part of the metropolitan sewer in a public highway. After the work was finished, the water returned to the pond. The statutes under which the work was done and the damages are claimed are

St. 1889, c. 439, and St. 1890, c. 270.   By § 1 of the latter act, amending § 4 of the former, the Commonwealth is to pay " all damages that shall be sustained by any person or corporation by reason of such taking or entering as aforesaid."   The entering referred to is the entering of existing sewers as authorized earlier in the section.   With that we have nothing to do in this case. The petitioner's case must stand on the word " taking."   But as the sewer was built under a highway, and as the board of sewerage commissioners only purported to take " the right to carry and conduct under the following described lands [viz. the highway], and therein to construct, operate, and forever maintain an underground main sewer," etc., no additional servitude was imposed upon the land under the highway.   *Lincoln* v. *Commonwealth, ante,* 1.   No right of any sort was taken in the petitioner's land.

But we do not need to decide that no damages can be recovered in any case under this act where property not taken in terms is injured in a permanent manner.   The question is one of construction, and may be left open until it is necessary to decide it.   It is enough to say that it is not disposed of by any authority which has been called to our attention.   There are further considerations in the case at bar.   So far as appears, nothing has been done which would have been actionable if no statute had been passed.   It is true that some statutes have been interpreted as giving damages for harm for which no action could have been maintained at common law.   But the fact mentioned is a circumstance to be considered.   The damage in this case not only would have been *damnum absque injuria* at common law, but it was temporary in its nature.   It is not a permanent consequence of maintaining the sewer, but was merely a temporary interruption caused by the work upon it.   Whatever latitude may be given to the statute, it does not extend to damages of this sort. As has been held in *Lincoln* v. *Commonwealth,* decided since the argument, such temporary damage is left by the statute to lie where it falls.   See *Bacon* v. *Boston,* 154 Mass. 100.   It follows that, in the opinion of a majority of the court, judgment must be for the respondent.

*Judgment for the respondent.*