### PHILIP G. PEABODY *vs.* BOSTON AND PROVIDENCE RAILROAD CORPORATION.

Suffolk.    January 14, 1902. — March 3, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Statute,* Construction.  *Boston and Providence Railroad Corporation.*  *Words,* "Lay out."  *Estoppel,* By conduct.

Under St. 1896, c. 516, §§ 18–20, the approaches to the station, which the Boston and Providence Railroad Corporation was authorized to build at the corner of Dartmouth and Buckingham Streets in Boston, were to be constructed by the city of Boston, except those approaches upon the land of the railroad company, which that company was to construct under § 19. Therefore a change of the grade of Buckingham Street by that company was unauthorized, and the remedy of one whose land was injured thereby is by an action of tort and not by a petition for damages under the statute.

In the provision of St. 1896, c. 516, § 20, that the street commissioners of Boston shall "lay out" suitable approaches to the station authorized by that statute to be built by the Boston and Providence Railroad Corporation, the words "lay out" are not used in their technical sense of laying out a way, but in a more general sense, including any alteration, relocation or repairs of existing ways necessary to connect the property of the railroad company with the streets of Boston.

A railroad company is not estopped to assert that in changing the grade of a certain public street it acted wholly without authority.

PETITION, filed December 21, 1899, and amended January 17, 1901, to the Superior Court under St. 1896, c. 516, § 23, for damages to property of the petitioner by the respondent's changing the grade of Buckingham Street in Boston in connection with its construction of the Back Bay station in that city.

The original petition alleged a filing on March 17, 1898, by the respondent of a location of its taking under the act. The amended petition alleged the location for the extension of the railroad on March 17, 1898, and a location of land for the construction of the station on December 30, 1897, and alleged the raising of the grade of Buckingham Street in front of the petitioner's land. The answer alleged that the petitioner ought not to maintain his petition because it was not brought within one year after the filing of the location, in accordance with the provisions of the acts under which he claimed damages.

St. 1899, c. 386, extended the time for filing petitions for damages from a change of grade occasioned by the location and construction of any railroad by any railroad company other than the terminal company under St. 1896, c. 516, as provided for in § 23 of that chapter, to the first day of January, 1900.

At the trial in the Superior Court before *Hardy*, J., the respondent asked the judge to rule, that the petition could not be maintained, because it was filed more than one year after either of the locations was filed; that the act of 1899, extending the time for filing petitions, did not apply to and cover the case of the petitioner; that the act of 1899, if it applied to this petition, was unconstitutional within the provisions of the Constitution of the Commonwealth and of the Constitution of the United States, because it removed the bar of the statute of limitations after the period of limitation had expired; and that upon the whole evidence the petitioner could not recover. The judge refused to make any of these rulings.

The case was then submitted to the jury, who assessed damages in the sum of $1,683, under instructions as to the rule of damages which were satisfactory to the parties; and, by agreement of the parties, the judge reported the case for the consideration of this court.

*F. T. Benner*, for the petitioner.

*J. H. Benton, Jr.*, for the respondent.

LORING, J. This is a petition for compensation for damages caused to the petitioner by the change in grade of Buckingham Street in front of the petitioner's house and land abutting on the southerly side of that street. The petition is brought against the respondent railroad on the ground that, by force of

the plans prepared by it and approved by the mayor of the city of Boston and the railroad commissioners, it acquired the right, under St. 1896, c. 516, to make the change in grade which it made, and if not, that it is estopped to set up its own wrong.

We are of opinion that on the facts stated in the report the petitioner has mistaken his remedy and that he should have brought an action of tort.

St. 1896, c. 516, provided for a union station on the south side of the city of Boston; § 19 of the act provided that within six months after the new terminal company filed a location for the south union station, the respondent corporation should prepare plans for a passenger station as a substitute for its Park Square station, and submit them first to the mayor of Boston and, after they had been approved by him, to the railroad commissioners. The plans were to be " plans and specifications for the construction of a passenger station and approaches thereto and facilities for passengers and public accommodation " as a substitute for the Park Square station, and were to show, among other things, the location of the station with reference to the adjacent streets.

By the preceding section (§ 18), the land was described which could be taken in whole or part for this station; it was bounded on the south by the northerly side of Buckingham Street. This section also provided that in addition to the land described the respondent corporation might take " any other land adjacent thereto, within such limits as the board of railroad commissioners may upon hearing in writing prescribe."

Section 19 further provides that after the plans are approved " Said station, approaches and facilities shall be constructed and provided " by the respondent corporation, "according to the plans thus approved." Section 20 provides that " the board of street commissioners of the city of Boston shall lay out, and said city shall construct, suitable approaches to said station or stations to be constructed near Dartmouth street, in such directions and at such grades as said board shall deem the public convenience and necessity require, and as the mayor of said city shall approve."

The respondent prepared plans for the construction of a station, as provided in the act, which were approved by the mayor of Boston and on November 1, 1897, by the board of railroad

commissioners.  These plans showed a railroad station abutting on the northerly side of Buckingham Street.  The grade of the floor of the new station is stated on the plans, and it is stated in the report that this grade is "about six feet above the then grade of the easterly end of" that street.  But there is nothing on the plans to indicate that fact.  The plans provided for an entrance at the easterly end of the station, and this entrance is delineated on the plan as opening on to Clarendon Street extension.  The land shown on this plan as Clarendon Street extension was not then laid out as a street and never has been laid out as a street, and was subsequently taken from its owner in fee by the respondent corporation, being included in the parcel taken by it under St. 1896, c. 516, § 18, as a location for the station in question.

The land taken by the respondent for this station was taken on December 30, 1897, and included all the land bounded on the north by the tracks of the Boston and Albany Railroad, on the east by Columbus Avenue, on the south by Buckingham Street, and on the west by Dartmouth Street.

Subsequently, in June, 1899, the railroad entered upon the land taken for the purpose of constructing its station and, so far as it appears, without further authority, constructed an approach to the easterly entrance of its station over Buckingham Street; and for that purpose widened that street and raised its grade.  It appears from the plan that the petitioner's house is one hundred and eighty-five feet from the easterly bend or corner of the street.  In making this change the grade of Buckingham Street in front of, abutting upon, and adjacent to the petitioner's premises was changed and the "sidewalk and street in front of and abutting upon the said premises upon the westerly side was raised two feet, and thence ascended regularly towards the easterly line of the premises where the grade was raised three feet."

It is stated in the report that "in order to provide a suitable and proper carriage entrance to the easterly end of said station, and in order to provide sufficient head-room for said railroad, Buckingham Street was raised by the defendant in grade in front of, abutting upon, and adjacent to the plaintiff's premises."  But it is also stated in the report that the order made by the

board of aldermen, acting as county commissioners of the county of Suffolk, prescribing the manner in which the extension of the respondent's railroad to the terminal company's grounds should cross the highways "did not prescribe any change of Buckingham Street at the easterly end thereof, or of any portion of said street abutting upon the estate of the petitioner, which estate was upon the southerly side of Buckingham Street at the easterly end thereof." It is also stated in the report that the house and land of the petitioner was "on the southerly side of Buckingham Street at a short distance westerly from its junction with Columbus Avenue." We understand that the change in grade made under the order of the board of aldermen should be laid out of the case, and the rights of the parties stand upon the change of grade made without regard to that order.

The respondent's contention before us is that it had no authority to change the grade in Buckingham Street; that the approaches which, by § 19, it was to construct were the approaches on its own land, and shown on the plans prepared by it and approved by the mayor of Boston and by the board of railroad commissioners; that the approach to the station by way of public streets was covered by § 20 and that those approaches were to be constructed by the city of Boston "at such grades as said Board [of street commissioners of the city of Boston] shall deem the public convenience and necessity require, and as the mayor of said city shall approve."

There is no statement in the report explaining why the proposed extension of Clarendon Street was not constructed, or why the railroad did not construct an approach to the easterly entrance of its station over the land, which was to be covered by the extension of Clarendon Street and which had, after the plan for its station was approved and before the approach over Buckingham Street was constructed, been taken by it in fee ; or how it happened that the respondent railroad corporation undertook and was allowed, not only to raise the grade of Buckingham Street, which was a public way, but also to enlarge it by adding twenty feet to its width. On the report it must be taken that this was done by the respondent without further authority.

The petitioner's answer to the respondent's contention that the

approaches on its own land were to be made by and at the expense of the respondent, and those by way of public streets were to be constructed by the city under § 20, is that that section applies to the laying out of new streets and not to reconstructing streets already laid out in order to make them suitable as approaches to the new station.   But we think that that is too narrow a construction of the section.

The provision of § 20 is not that the street commissioners shall lay out such new streets as are necessary, but it is that they shall "lay out" "suitable approaches."   We are of opinion that the words "lay out" in this connection are not used in their technical sense of laying out a way, but in the more general sense of making it the duty of the street commissioners to prescribe any changes that might be necessary in the public streets to connect the private property of the respondent railroad with the streets of Boston, including what would ordinarily be done by laying out a new way or altering relocating or directing specific repairs upon an existing way.

The language of the section is loose, but it is not to be lightly presumed that the Legislature intended to give to a railroad a roving commission to change the grades of the public streets, without the sanction of any public authorities; and this construction is confirmed by the fact that § 19 provides that the approaches shown on the respondent's plan shall be constructed by them, that is to say, approaches on its own land are to be made by the railroad and approaches by way of public streets are to be left to the control of the street commissioners of the city and to be constructed at their expense.   In this case, the respondent presented a plan showing as an approach a proposed street called on the plan Clarendon Street extension; so that, on the plan which was approved, no approach, to be constructed by it under § 19, was shown.

The petitioner's second answer to this contention is, that the respondent is estopped to set up its own wrong, and the case of *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107, is relied upon as an authority to that effect.   The decision in that case was put upon the ground that the railroad had a right to construct the approaches to the overhead bridge under the statutes then in force, after notice to the selectmen of their intention so to do,

not objected to by them. It is settled that where a corporation has the right to condemn property and proceeds as if it had condemned it, it is estopped to set up in a petition for compensation that it has not complied with the formalities prescribed for a technical taking. *Lewis* v. *Boston*, 130 Mass. 339. *Spaulding* v. *Arlington*, 126 Mass. 492, 494. *Lexington Print Works* v. *Canton*, 171 Mass. 414, 415. *Gloucester Water Supply Co.* v. *Gloucester*, 179 Mass. 365.

But where the act done by the respondent, for which compensation is sought, is outside of the acts, which the respondent can entitle itself to do by any act of condemnation, the petitioner's remedy is by an action of tort, and the respondent is not estopped to set up that defence if a petition for compensation is brought against it.

We are of opinion that the jury should have been instructed that upon the whole evidence the petitioner could not recover.

Although this case comes here by report, we think that the entry should be

*New trial granted.*