EUGENE G. MCSWEENEY & another *vs.* COMMONWEALTH.

Middlesex.          November 17, 1903. — April 1, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Metropolitan Park Commission. Damages. Deed. Easement.*

The provision of § 5 of the metropolitan park commission act, St. 1894, c. 288, that damages sustained by the taking of land or any right therein under the act shall be "assessed by a jury of the Superior Court in the same manner as is provided by law with respect to damages sustained by reason of the laying out of ways" refers only to the mode of procedure and not to the elements of damage for which recovery may be had.

Under § 5 of the metropolitan park act, St. 1894, c. 288, providing for the payment of all damages sustained by the taking of land or any right therein under the act, the owner of land not taken cannot recover for temporary injury to his land by the accumulation of water caused by the taking of adjoining land for a parkway.

One who gives a deed of land with full covenants of warranty cannot claim a reservation by implication of an easement of drainage through the granted land for the benefit of his remaining land.

The owner of land adjoining lower land which has been taken for a parkway under the metropolitan park commission act, St. 1894, c. 288, cannot recover for injuries to his land caused by a drain pipe which passed through his land without right being cut on the land taken, so that the sewage from houses above no longer being carried off by the drain has flowed into his cellar. His remedy would be to stop the drain where it entered his land.

LATHROP, J. This is a petition for the assessment of damages alleged to have been occasioned to the land of the petitioners in Everett by the acts of the metropolitan park commission in taking certain land and constructing a parkway thereon, under the St. of 1894, c. 288, and the St. of 1895, c. 450. At the close of the petitioners' evidence, the jury were directed to return a verdict for the respondent; and the case is before us on the petitioners' exceptions to this ruling.

No part of the petitioners' land was taken by the park commissioners, but a portion of the adjoining lot was taken up to within a few feet of the petitioners' boundary line. On the northerly side of the parkway the land slopes up gradually for some three hundred feet to Chelsea Street. During the work of construction of the parkway, an underground drain pipe running across the rear of the petitioners' land and the land taken was broken by the employees of the commission, within the limits of the land taken, and permanently obstructed.

The petitioners' land is situated on Ferry Street Extension, which runs from Chelsea Street down to the parkway, but is not connected therewith. The petitioners bought their land in October, 1892, from one Peters, who owned at the time either alone or jointly with one Hadley five and a half acres of land, of which the petitioners' land was a part. In 1890, Peters built a drain across his land, running from a point about one hundred feet below Chelsea Street down across the land afterwards sold to the petitioners and land afterwards sold by Peters and Hadley to one Bench in 1895. This drain emptied into a creek in the marsh below. The drain, Peters testified, was designed for the drainage of the houses which might afterwards be built on the land, and also to take the underground water from the springy soil near the beginning of the drain, and it was so constructed that rain water could get into it.

The drain was broken on May 31, 1901, and on the next day the petitioners' cellar was flooded to the depth of a foot and a half or more, and water remained in the cellar until July 15, 1901, when a connection was made with a sewer of the city of Everett, that had just been put through Ferry Street Extension. The water which came into the cellar was house sewage from eighteen families living between the petitioners' lot and Chelsea Street. The effect of the water was to injure the house, and the petitioners were obliged to take a room in another house for six or seven weeks.   Since that time, whenever there is a heavy rain, surface water has come through the cellar wall into the cellar. This water came down Ferry Street Extension, and was accumulated near the parkway.   At the time of the trial a drain was being built to take care of this surface water.

At the time the land was sold to the petitioners there was no other house on the five and a half acre lot.   The plumbing of the petitioners' house was connected with the drain by Peters after the petitioners bought the land.   The deed to the petitioners was a warranty deed in the usual form, and it contained no grant of an easement in the drain, nor any reservation of a right to Peters to drain the sewage or water from his remaining land through the petitioners' land.

The St. of 1894, c. 288, § 5, provides for the payment of "all damages sustained by any person or corporation by the taking of land, or any right therein."   The additional provision that damages shall be "assessed by a jury of the Superior Court in the same manner as is provided by law with respect to damages sustained by reason of the laying out of ways" has reference only to the mode of procedure, and not to the elements of damage for which recovery may be had.   *Hay* v. *Commonwealth*, 183 Mass. 294.

As no part of the petitioners' land was taken, we are of opinion that they cannot recover for the temporary injury done to their land by the accumulation of surface water caused by the parkway being at a higher grade than the foot of Ferry Street Extension.   See *Lincoln* v. *Commonwealth*, 164 Mass. 368, 374; *Chelsea Dye House & Laundry Co.* v. *Commonwealth*, 164 Mass. 350, and cases cited.

The remaining question is whether the petitioners had an easement in the land taken for the maintenance of the drain.

There was no easement by grant in the land taken, nor was there any by prescription.

If the petitioners' land had any easement it was by implied grant; but easements by implied grant are those which are strictly necessary to the principal thing granted, and mere convenience is not enough. *Nichols* v. *Luce*, 24 Pick. 102. *Buss* v. *Dyer*, 125 Mass. 287. *Johnson* v. *Knapp*, 150 Mass. 267. *Cummings* v. *Perry*, 169 Mass. 150. In the case at bar there was no evidence that the drain was necessary.

At the time the conveyance was made to the petitioners, the drain was used only for the purpose of carrying off underground water from land above them, some distance from their lot. The petitioners do not contend that they have been injured by having the drainage from their house cut off temporarily, but they contend that they have been injured by the sewage from the houses that had been built above them, after the conveyance to them had been made, being cut off and coming into the cellar of their house. It is difficult to see upon what ground the petitioners can claim an easement in the land taken for the purpose of having the sewage of the houses above them pass through their land and that taken. The petitioners were not compelled to receive the drainage from the houses above them, unless it can be said that when Peters conveyed to them he impliedly reserved a right of drainage for his remaining land. But this cannot be said in view of the covenants of warranty and freedom from incumbrances in the deed to the petitioners. *Carbrey* v. *Willis*, 7 Allen, 364. *Adams* v. *Marshall*, 138 Mass. 228.

While Peters owned the entire lot of five and a half acres he could acquire no easement in the drain, and when he conveyed to the petitioners by a deed containing full covenants of warranty, both he and those claiming under him were estopped to claim any interest in the granted premises. *Carbrey* v. *Willis, ubi supra.* The petitioners therefore were not obliged to receive the sewage from the land above, and might have stopped up the drain where it entered on their land.

The order therefore must be,

*Exceptions overruled.*

*M. S. Holbrook,* (*M. Holbrook* with him,) for the petitioners.

*R. G. Dodge,* Assistant Attorney General, for the Commonwealth.