HENRY G. TODD & others *vs.* OLD COLONY RAILROAD COMPANY.

Bristol.    October 23, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Railroad.    Negligence.    Watercourse.*

The proprietor of an ice pond cannot maintain an action of tort at common law against a railroad company for injury to his crop of ice during one season from particles of fine clay, which were washed down from the filling of an embankment made by the defendant in the construction of its road a mile and a half above the plaintiff's pond, being held in suspension in the waters of a brook that fed the pond, where it appears that the embankment was built under authority of law and was of a proper slope for its height and width, and that the kind of

clay used for filling, while not so good as pure gravel, was in common use for railroad embankments and made a good solid embankment, and that there is likely to be more or less wash from such embankments during the first season, and where it does not appear that the attention of the agents or servants of the defendant ever was called to the fact that a mile and a half below the embankment the water of the brook was used for the cultivation of ice, there being nothing in the foregoing facts to show that the defendant had done any act not reasonably necessary and proper in the construction of its road under authority of law, so that the plaintiff's remedy, if any, was statutory.　The question whether the railroad company as an upper riparian proprietor had not the right to make such a reasonable use of its own land, although unavoidably causing temporary injury to the lower proprietor, and therefore was not answerable in any form of action, was not passed upon.

HAMMOND, J.　This is an action of tort for damages caused by the pollution of a natural stream.　The plaintiffs are the owners of a pond five acres in extent, from which they cut ice to be sold.　The pond is fed by a brook which is formed by the union " at some distance from the pond " of two small brooks respectively called the north and the south branches.　These branches are winding, very irregular, in some places dry at times, and, where crossed by the defendant's railroad, have banks one and a half to two feet high and are five or six feet wide.

In 1902 the defendant built a short line of railroad crossing these two branches about a mile and a half above the plaintiffs' pond, measured by the course of the stream.　In the construction of the railroad it became necessary to make a number of cuts and fillings or embankments.　One embankment about twenty feet high at its highest part crossed the north branch over a box culvert built of stone ; another, somewhat higher, crossed the south branch in the same way.　At the trial it was agreed that the " defendant had a legal right to build this road, that it got its location, bought the land and had the work done."

It appeared at the trial that these embankments were made of earth taken from the neighboring cuts, and that some part of this earth consisted of fine clay or marl, which in wet weather during the winter of 1902–3 was washed down into the water of the brooks and, remaining in suspension in the water, damaged the ice in the plaintiffs' pond so that it was unsalable.　It does not appear that after the first season, namely in the winter of 1902–3, there has been any trouble with the ice.　The trial judge ruled that the plaintiffs could not recover, and directed a verdict

for the defendant. To save another trial, however, he directed the jury to assess damages, which they did in a substantial sum, and he then reported the case for our determination. The question is whether the defendant is answerable for the loss, and, if so, whether it is answerable in this form of action.

It is strongly contended by the defendant that the right of a riparian proprietor to the purity of a stream is not absolute, but is subject to the rights of the owners and occupiers of the land above him upon the same stream to make a reasonable use of their land, even if the purity of the stream is thereby unfavorably affected, especially where the injury to the water is only transient and temporary; that in this case the use of the land by the defendant was such as at common law would have been proper and lawful; that the damage to the plaintiffs was unavoidable and transient; and therefore that the defendant is not answerable in any form of action. But we have not found it necessary to pass upon this defence, because we are of opinion that the order of the trial court may well rest upon the second ground of defence.

The defendant had the right to build these embankments, and, so long as it did only what was reasonably necessary or proper to do that work, it did no legal wrong and committed no tort even if it damaged the property of others. The remedy in such cases is under the statutes. As stated by Shaw, C. J. in *Dodge v. County Commissioners*, 3 Met. 380, 383: "An authority to construct any public work carries with it an authority to use the appropriate means." And this authority is to be construed with reasonable liberality. "So long as . . . [those entrusted with such authority] . . . act in good faith, within the scope of the powers granted to them, without being guilty of negligence, carelessness or wanton disregard of the rights of individuals, they will be protected from all liability, except in the mode and by the process fixed by the statute under which they act." Bigelow, J. in *Mellen* v. *Western Railroad*, 4 Gray, 301, 303.

As above stated, it was agreed at the trial that the defendant acting under the right of eminent domain had the right to make these embankments; and we do not understand the plaintiffs to contend that the culverts are too small, or that the embankments are not properly constructed except in one respect, and that is

the manner in which the marl or fine clay was placed therein. The plaintiffs say that if this clay was to be used it should have been used so that no part of it would be washed by the rains into the brooks, or that at least reasonable care should have been taken to that end ; and that such reasonable care was not exercised.

The material, including the clay, was all taken from the neighboring cuts, and all the witnesses testified that it was proper material for an embankment. Perkins, a civil engineer in the employ of the defendant, testified that such material was in common use, and that it makes a solid embankment; that it was used in the usual way, and that the slope was a proper slope to hold the embankments up. Upon cross-examination he testified however that gravel was the best material for an embankment and "washed" less than clay, and in his opinion would not be held in suspension in water so long as clay. One Blakeslee, an experienced railroad contractor called by the defendant, testified that he did the work on these embankments ; that the filling was good ; that such filling is in general use, and is a safe filling for railroad purposes; that the "clay, after it gets compact, gets very hard and makes a very solid bank"; and that the slope of the embankment was a proper slope for its height and width. In answer to the question whether anything more could have been done than was done to prevent the surface water from going down, he said he did not think there could. He further said : "We did what is usually done in the construction of railroad embankments, and took the usual precautions, so far as there were any to take." On cross-examination he said that in the deep cuts no pains are taken "to sort it [the loam, gravel or clay] out or say in what part of the fill . . . [each] . . . shall go"; that gravel "sheds water better than anything else." One Hatch, an employee of the defendant in its engineering department, testified that he was the inspector under Perkins; that the filling was good for railroad purposes and was put in in the ordinary manner ; that in his opinion it was not possible to construct banks so that no part of the filling would be carried into the brooks ; that he knew of no provision for disposing of surface water on railroad embankments and that he never saw any ; "we simply give proper slope to [the] bank and let it run

down to the low lands." Upon cross-examination he said that " if the material of the bank was all alike " there would be no gullies down the bank. Other witnesses testified to the same general effect. Indeed the evidence was uncontradicted that the filling here used, while not so good as pure gravel, is in common use for railroad embankments and makes a good, solid embankment; that there is liable to be more or less " wash " at first, but that that is only of short duration. One Dean, a civil engineer, also testified that he knew of no way of preventing " wash of the embankments some the first season." He further said: " I never saw gravel put on the outside of a slope. The objection to that is that the water would settle through the gravel and tend to have a water-course at the bottom." Indeed the whole evidence shows that the embankments were of the usual slope, constructed of materials commonly used for such a purpose, and were solid. They were built in bushy territory and crossed two small brooks, over proper stone culverts. It does not appear that the attention of the defendant's agents or servants was ever called to the fact that a mile and a half below on these brooks the water was used for the cultivation of ice. Moreover the damage is only transient. When the witnesses testify that it is not possible to do a certain thing, such for instance as preventing the wash of the embankment, we do not understand them to mean that, considered merely as an engineering feat, it cannot be done, but they mean that the expense would be so disproportionate to the end to be reached as to make the proposed act from a business and common sense point of view impracticable.

In view of all the evidence we do not think that the plaintiffs have shown that in the construction of these embankments the defendant has done any act not reasonably necessary and proper. Hence it has done no act not authorized by law. If the plaintiffs have suffered any injury their remedy must be under the statutes and not in an action at common law.

*Judgment on the verdict.*

*W. H. Fox & F. B. Fox,* for the plaintiffs.

*F. S. Hall,* for the defendant.