THOMAS R. COATES vs. JOHN C. SOLEY & another.

Suffolk.   January 9, 1907. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Employer's liability.

In an action under R. L. c. 106, § 71, cl. 2, by a teamster against his employer for personal injuries received when assisting in moving a wooden house, alleged to have been caused by the negligence of a superintendent of the defendant, it appeared that a person, who was admitted to be a superintendent within the meaning of the statute, ordered the plaintiff to unhitch his horse from the wagon in order to haul certain heavy timbers up to the house, and ordered another workman to make fast to the timber, which he did, that the plaintiff hitched to the timber and started the horse but the chain slipped, and as the plaintiff was in the act of prying two of the timbers apart, to make it easier for the horse to haul the timber to which the chain was attached, the superintendent took hold of the horse's head and started him, causing the plaintiff to be caught between two timbers and injured. *Held*, that there was evidence of due care on the part of the plaintiff and of negligence on the part of the superintendent; and that the act of the superintendent in starting the horse, although in itself an act of manual labor, could be found to have been done as an act of superintendence for the purpose of assisting in doing what he as superintendent had ordered to be done.

TORT under R. L. c. 106, § 71, cl. 2, for personal injuries received on October 20, 1903, while in the employ of the defendants assisting in the moving of a wooden house, through the alleged negligence of a person entrusted with and exercising superintendence. Writ dated April 14, 1904.

At the trial in the Superior Court before *Holmes*, J., the evidence tended to show the following facts: The plaintiff, who was a teamster by occupation, had been employed by the defendants off and on for about fifteen years, and had been employed by them steadily for one year before the accident. During the fifteen years he was with the defendants he occupied different positions, chiefly that of teamster. The defendants were engaged in the work of moving buildings and the plaintiff frequently assisted directly in this work, in addition to his duties as teamster. At the time of the accident the defendants were engaged in moving buildings upon certain land recently purchased by the United States Government in Nahant. The portion of the work

on which the plaintiff was engaged was in charge of a foreman
named Murray, who was admitted to be a superintendent within
the meaning of the employers' liability act, and who, at the time
of the trial, was still in the employ of the defendants. At the
time of the accident there were five men besides the foreman in
the plaintiff's gang, all of whom testified in behalf of the plain-
tiff except one who at the time of the trial had removed to
Newfoundland.

The plaintiff testified that on the morning of the day of the
accident Murray and his gang drove on the plaintiff's team from
the railroad station, and when they got to the place of work
Murray said he wanted the plaintiff to work with him on that
day. The accident happened directly after the men had returned
to work at the end of the noon hour. At that time they were
about to move certain timbers up to a house which was in the
process of being moved. Murray told the plaintiff to unhitch his
horse from the wagon, so they could haul the timbers up instead
of carrying them. The plaintiff took the horse out of the wagon
and took him round to the ends of the timbers. These timbers
were three in number and were lying parallel to the house,
twenty-five to thirty feet from the house, the elevation of which
was about ten or twelve feet higher than that of the timbers.
The timber nearest to the house was thirty-three feet long and
ten by twelve inches, the centre timber eight by ten inches and
about the same length, the one farthest from the house was
thirty feet long and ten by twelve inches, and there was a space
of about a foot between each of the timbers. All three were
hard pine, square timbers. The first piece of timber to be moved
was the one farthest from the house. Murray said to the plain-
tiff, " Tom, unhitch the horse and we will haul that timber up,
it would be a good deal better than to carry it up." The plain-
tiff described the accident as follows: " He (Murray) directed
one of the men to make fast to the timber, and I made fast the
horse to the whiffletree and I went to start the horse — I did
start the horse and the timber moved a little bit and the chain
slipped and I went back. . . . I said, ' Wait a minute and I will
get a bar,' and as I did I stepped over the timbers and run up to
the house and I run back again and I stepped over this timber
and in the act of putting the bar between the two timbers to

kind of separate them to make it easy for the horse to pull the timber, the foreman started the horse and pulled the timber right up in that shape and caught me right in here."

Members of the gang who were working with the plaintiff testified that the horse was started by Murray while the plaintiff was placing the bar between the timbers near Murray and within his sight. Murray himself, who was the only witness called by the defendants, testified that he took the horse by the head and started him. The plaintiff testified on cross-examination that the horse was a quick moving horse when he started. Murray testified " When I took hold of him, the horse took the motion just about the same time. He was quick movement and he took the motion about the same time. . . . The horse started and Coates landed in between here as the stick rolled over." He testified that when he put his hand on the bridle of the horse to start him ahead the plaintiff was not between the two sticks of timber.

The plaintiff testified that the horse was a very quiet one and that during the time he had been working with it, which was almost a year, he never knew this horse to start without being urged or spoken to.

At the close of the evidence the defendants asked the judge to rule that the plaintiff was not entitled to recover, and that the starting of the horse, under all the circumstances, was not an act of superintendence. The judge refused to make either of these rulings and submitted the case to the jury. They returned a verdict for the plaintiff in the sum of $2,433.33; and the defendants alleged exceptions.

*W. H. Hitchcock,* for the defendants.

*P. R. Blackmur & J. B. Sullivan, Jr.,* for the plaintiff, were not called upon.

MORTON, J. We think that there was evidence warranting a finding that the plaintiff was in the exercise of due care and that the accident was due to a negligent act of superintendence on the part of Murray. It could have been found, and for aught that appears it was found, that in taking an iron bar and prying the timbers apart the plaintiff was engaged in the performance of work which he was hired to do, and that he had no reason to suppose that Murray would start the horse or that the horse

would start of its own motion. It could not have been ruled therefore that he was wanting in due care.

The exceptions recite that it was admitted that Murray was " a superintendent within the meaning of the employers' liability act." There was evidence tending to show that Murray directed the plaintiff to unhitch the horse from the wagon so as to haul the timber up to the house and directed one of the men to make fast to the timber, which he did, and that the plaintiff thereupon hitched on to the timber and started the horse, but the chain slipped, and as he was in the act of prying the timbers apart so as to make it easier for the horse to pull the timber, Murray took hold of the horse's head and started it up causing the injury complained of. It is plain we think that Murray's act in starting up the horse was or could have been found to be done as an act of superintendence for the purpose of assisting in doing what as superintendent he had directed to be done, and therefore to derive its quality not from the mere act of manual labor which was necessary in starting the horse, but from the exercise of the controlling authority which he had as superintendent. *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586. *McPhee* v. *New England Structural Co.* 188 Mass. 141. Whether there was negligence on Murray's part was clearly for the jury. It follows that the rulings that were requested were rightly refused.

*Exceptions overruled.*