WEBSTER THOMAS COMPANY *vs.* COMMONWEALTH
(and two companion cases[1]).

Suffolk.    February 5, 1957. — May 31, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN,
& WHITTEMORE, JJ.

*Eminent Domain,* Injury to property without taking, Right to damages, "Special and peculiar" injury, Damages. *Practice, Civil,* Proceeding for assessment of land damages, Premature action.

Under G. L. (Ter. Ed.) c. 79, §§ 9, 16, as amended, a landowner's right to damages for injury caused to a building on premises not taken by the Commonwealth when it took abutting premises and demolished the building thereon, exposing a common interior boundary wall of the remaining building and necessitating substantial expense to make the wall adequate and safe as an exterior wall, vested upon completion of the demolition, and a proceeding for assessment of such damages commenced within one year thereafter, although more than one year after the taking, was seasonably commenced. [134-135]
A proceeding for assessment of damages by a landowner for injury caused to a building on premises not taken by the Commonwealth when it took abutting premises and demolished a building thereon, exposing a common interior boundary wall of the remaining building and necessitating substantial expense to make the wall adequate and safe as an exterior wall, in the circumstances was not premature under G. L. (Ter. Ed.) c. 79, §§ 9, 16, as amended, where it was commenced

[1] The companion cases are by Webster Thomas Company and by Philip H. Theopold and another, trustees, against the same respondent.

after the demolition had begun and the necessary work on the wall had been undertaken but several months before the right to damages vested by virtue of completion of the demolition. [135–136]

G. L. (Ter. Ed.) c. 79, §§ 9, 12, themselves gave no right to damages to a landowner for injury caused to a building on premises not taken by the Commonwealth when it took abutting premises and demolished a building thereon, exposing a common interior boundary wall of the remaining building and necessitating substantial expense to make the wall adequate and safe as an exterior wall. [137]

G. L. (Ter. Ed.) c. 81, § 7, and § 7C, inserted by St. 1943, c. 397, gave an owner of premises not taken by the Commonwealth when it took abutting premises for a limited access way and demolished a building thereon, exposing a common interior boundary wall of a building remaining on the premises not taken, a right to recover from the Commonwealth, as "special and peculiar" damages within c. 79, § 12, the reasonable cost of reconditioning the wall as an exterior wall and indemnity for water damage to the remaining building resulting from flooding of its basement during a comparatively heavy but not unusual rain before the wall was reconditioned. [138–139]

Two PETITIONS by Webster Thomas Company, filed in the Superior Court on July 1, 1952, and May 13, 1954.

PETITION by Philip H. Theopold and another, trustees, filed in that court on December 31, 1952.

The cases were tried before *Morton, J.*

*George Fingold*, Attorney General, & *Vincent J. Celia*, Assistant Attorney General, for the Commonwealth, submitted a brief.

*Philip B. Buzzell*, (*Charles M. Ewing* with him,) for Webster Thomas Company.

*R. Gaynor Wellings*, (*Philip E. Tesorero* with him,) for Theopold and another, trustees.

SPALDING, J. These are three petitions for the assessment of damages alleged to have been caused to land and buildings of the petitioners by the construction of a portion of the Boston Central Artery. The cases were tried to a judge.

A summary of the relevant evidence is as follows: By an order of taking dated July 10, 1951, the Commonwealth, acting through its department of public works, made a taking which included parcels of land numbered 201, 207, 209–211, 213–215, and 217–219 State Street, Boston, for the purpose of laying out, constructing, and maintaining a

portion of the proposed Boston Central Artery with limited access restrictions. See St. 1950, c. 685. The premises of the petitioner Webster Thomas Company, at 221 State Street, are adjacent to the premises taken and numbered 219, and the premises of the petitioners Theopold and Bigelow, trustees under the will of Cora C. Boyden, at 199 State Street, are adjacent to the premises taken and numbered 201 State Street. (For convenience Webster Thomas Company will be referred to hereinafter as Webster, and its building as the Webster building; and the trustees under the will of Cora C. Boyden will be referred to hereinafter as the Boyden trustees, and their building as the Boyden building.) Each of the aforementioned parcels comprised a lot and one building and was located in the block numbered 175 to 235 on State Street. The buildings in the block were constructed sometime prior to 1860 under an architectural scheme of the then owners of the entire tract. Under this scheme the land was subdivided into sixteen parcels, each of which was sold on terms and conditions that obligated the purchasers to erect buildings thereon in accordance with certain specifications. The specifications provided that "These sixteen buildings are to form when completed, one block of warehouses, having four fronts or facades upon four streets." The block was to be bounded on the north by State Street, on the south by Central Street, on the west by a new street located alongside the Custom House, and on the east by a portion of Long and Central wharves.

The block was built in accordance with the specifications. All of the sixteen warehouses so built had five stories above ground, one below ground, an attic story extending the whole length and width of each warehouse, and a second attic, or cock-loft, above this story. Sometime after the original construction, some of the warehouses, including the Webster building, were altered by the addition of a sixth, seventh and eighth story. All foundations were of granite to the underside of the wooden joists of the first floor. Above this elevation all boundary walls between the in-

dividual warehouses in the block were of brick, the thickness of which was sixteen inches to the third floor joists and twelve inches for the portion above. The outside walls of the block were faced with granite eight inches thick backed with brick of a thickness of twelve inches.

The taking order expressly excepted "All rights that owners of properties abutting the layout may have in existing party walls."

On June 13, 1952, the Commonwealth commenced the demolition of the structures standing on the parcels in the block taken by it, and it was substantially completed on or about October 26, 1953. The demolition of these structures exposed an interior brick boundary wall of each petitioner. One half of each wall stood on the lots of each petitioner, and one half on the lots taken by the Commonwealth. There was expert testimony that while these boundary walls were safe and adequate as interior walls, they were not designed as exterior walls; that so long as the buildings on the land taken were standing the boundary walls were safe, but upon the removal of the adjacent buildings the walls would have buckled outward unless tied in. By letters dated July 1, 1952, the building commissioner of Boston informed the Commonwealth that certain things should be done in order to make the exposed walls safe. The Commonwealth having "refused to take any action along the lines required in these letters," the petitioners at their own expense performed the work required at costs which could have been found to be fair and reasonable.

The walls were made of soft, underburned bricks which were suitable for interior walls but not for outside walls and there were cracks in the walls through which water might seep. Hence the petitioners were obliged to incur additional expense to make the walls weatherproof.

In addition to the expenses incurred in connection with its wall, Webster suffered other damage. On November 23, 1953, before the boundary wall was reconditioned, there was a comparatively heavy, but not unusual, rain which resulted in flooding the basement of the Webster building

and causing damage to property therein to the extent of $3,553.91.

Webster filed two petitions under G. L. (Ter. Ed.) c. 79, § 14, seeking recovery for the damage done to its property. One of these, filed July 1, 1952, was based on a taking of an alleged right of Webster to support and shelter of its building; the other, filed May 13, 1954, was framed on the theory that, although there was no taking, the petitioner suffered special and peculiar damage. The trial judge found for Webster on each petition in the sum of $46,144.84. He did so "knowing full well that . . . [his] finding in one of the two cases was wrong . . . being informed that . . . [the cases were] to be taken to the Supreme Judicial Court . . . [where] determination would be made [as to] which of the two petitions . . . will be allowed, if either."

The Boyden trustees, on December 31, 1952, filed a single petition under G. L. (Ter. Ed.) c. 79, § 14, in which they set forth a taking of their alleged right to support and shelter and also special and peculiar damage to their property as a result of the demolition of the buildings adjacent thereto. The judge found for the Boyden trustees and awarded damages in the amount of $31,277.45.

The cases come here on exceptions by the Commonwealth to the admission of certain evidence and to the denial of several of its requests for rulings.

For reasons hereinafter set forth we are of opinion that Webster under its second petition alleging "special and peculiar" damage and the Boyden trustees under similar allegations in their petition were entitled to recover. The amount recoverable by the petitioners under this theory would be at least as large as that under a taking. We do not, therefore, reach the question whether either petitioner could recover on the basis of a taking.

The first question to be discussed is whether the proceedings were seasonably commenced.[1] The Commonwealth

---

[1] This question was raised by the denial of the Commonwealth's request for ruling numbered 11 which reads: "The actions are not seasonably commenced."

contends that the second Webster petition was brought too late. We do not agree. General Laws (Ter. Ed.) c. 79, § 16, as amended, provides that a "petition for the assessment of damages under section fourteen may be filed within one year after the right to such damages has vested . . . ." Section 9 of c. 79, as amended, which deals with situations where there has been an injury to property without a taking, provides, so far as here material, that "the right to damages shall not vest . . . until the work which caused the injury has been completed." It has been held that the words "work which caused the injury" refer to the particular portion of the work on the public improvement which caused the injury and the right to damages vests immediately upon the completion of that work even though the entire public improvement, of which such work was a part, has not been completed. *Wine* v. *Commonwealth*, 301 Mass. 451, 456. The work which caused the injury here was completed on or about October 26, 1953, and the second Webster petition was filed on May 13, 1954, well within one year after the right to damages had vested. Webster's second petition, therefore, was seasonably commenced.

Viewed as a proceeding for injury done to property without a taking, the Boyden petition was brought several months before the right to damages vested, which was, as in the Webster case, on or about October 26, 1953. We do not think — and the Commonwealth does not contend — that the petition was premature.[1] The right under consideration is the creature of statute and the time within which the right may be exercised is governed by G. L. (Ter. Ed.) c. 79, § 16, which provides that a petition for damages "may be filed within one year after the right to such damages has vested." It has often been held that where a statute requires action to be taken within a certain time *after* an event, the action may be taken before the event, the statute being construed as fixing the latest but not the earliest time

---

[1] The position of the Commonwealth is that the petition was brought too late even if viewed as an action for damages without a taking. This position is obviously untenable, because the petitioner had until one year after October 26, 1953, the date the right to damages vested, in which to bring the petition.

for the taking of the action. *Tanzilli* v. *Casassa*, 324 Mass. 113, and cases cited at page 115.[1] We recognize that ordinarily an action at law may not be maintained if at the time it is commenced there is not in existence a complete cause of action. *DeNuccio* v. *Caponigro*, 259 Mass. 365. *Judkins* v. *Tuller*, 277 Mass. 247, 250. See *Cobb* v. *Library Bureau*, 260 Mass. 7, 14. But there may be special circumstances in which an action created by statute may be instituted before the right finally accrues. *Furlong* v. *Cronan*, 305 Mass. 464, 469–470.[2] We think that this is such a case. The work affecting the Boyden building had already begun when the petition was filed. Moreover, the Boyden trustees had already been required to undergo the expense of strengthening the boundary wall between their building and the structures taken by the Commonwealth. In these respects the case differs substantially from *Everett* v. *Fall River*, 189 Mass. 513, 517, and *Kidder Peabody Acceptance Corp.* v. *Old Colony Railroad*, 256 Mass. 41, 44, where it was held that the proceedings were premature if brought before entry was actually made on the petitioners' lands under an order of taking. As soon as the Commonwealth began demolition of the adjacent buildings it was clear to the trustees and to the Commonwealth that the premises were going to be damaged. What was not clear was the remedy afforded to the trustees, that is, whether they were entitled (1) to recover for damage arising out of a taking of their alleged right to support and shelter or (2) for "special and peculiar" damage absent a taking. That this doubt was shared by the trial judge is evidenced by the manner in which he dealt

---

[1] The *Tanzilli* case involved G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended, which required appeals to be filed in the Superior Court "within fifteen days after . . . [the] decision [of the board of appeals] is recorded." Although the plaintiffs filed their appeal *before* the decision of the board was recorded it was held that the appeal was properly taken and was not premature.

[2] In that case the insurer by § 15 of the workmen's compensation act was given the right in certain circumstances to proceed against a third party if "compensation be paid under this chapter." It was held, nevertheless, that a third party action could be commenced before the time of payment and that the statute was complied with if prior to the actual trial the compensation had been paid.

with the Webster petitions. If the trustees had waited until their rights vested under the "special and peculiar" damage theory, they would have been late under the taking theory. It would be an idle requirement to have them file two petitions. They ought to be able to try out their rights on both theories in one proceeding. The Commonwealth was certainly not prejudiced thereby and does not so contend. Consequently we are of opinion that the petition can be maintained.

The Commonwealth asked the judge to rule that neither at common law nor by statute were the petitioners entitled to recover (requests numbered 1 and 3) and that the provisions of c. 79 are procedural only and do not create substantive rights against the Commonwealth (request numbered 4). These requests were denied subject to the Commonwealth's exceptions. The Commonwealth also excepted to the admission of evidence of (1) the cost of tying in the exposed boundary walls; (2) the cost of weatherproofing these walls; and (3) the water damage to the Webster building. As these exceptions present questions that are somewhat related they will be discussed together. We deal with these exceptions on the footing that there has been no taking.

Contrary to their contention, the petitioners' right to damages cannot be found in G. L. (Ter. Ed.) c. 79, § 12. In the very recent case of *Sullivan* v. *Commonwealth*, 335 Mass. 619, we said at page 625, "Section 12 defines the 'measure of damages' in stated cases but does not purport to create a right thereto." We also held that §§ 9 and 10 of c. 79 do not of their own force give a landowner a right to damages where there has been no taking. *Sullivan* v. *Commonwealth, supra,* at page 624. The statute authorizing the improvement involved in the *Sullivan* case did not provide for recovery except where there was a taking. There was no taking in that case; nor was there any general statute allowing recovery in the situation there (damage caused by blasting during the construction of an aqueduct). Accordingly we did not permit the petitioners to recover.

We must, therefore, find the source of the petitioners'

right to recover elsewhere than in c. 79. In the statute authorizing the public improvement in these cases (St. 1950, c. 685), the Legislature has failed to provide expressly for compensation where there is an injury without a taking. However, assuming that the judge erred in denying the Commonwealth's request that the provisions of c. 79 were procedural only, the error would not affect the result because there is a general statutory provision permitting recovery in the circumstances here disclosed. General Laws (Ter. Ed.) c. 81, § 7, provides, "When injury has been caused to the real estate of any person by the laying out or alteration of a state highway, he may recover compensation therefor from the commonwealth under chapter seventy-nine." Under § 7C of c. 81, inserted by St. 1943, c. 397, as amended, "All of the provisions of law in regard to the laying out . . . of state highways and to damages therefor shall apply to limited access ways." We think that the clear meaning of these sections is to make available the procedure of c. 79 for assessment of damages where injury has occurred to real estate by the laying out of the Boston Central Artery, which is a limited access way. By authority of these provisions there can be recovery under c. 79 whether or not there has been a taking.

Chapter 79, § 12, provides that where there has been an injury without a taking damages for only such injury as is "special and peculiar" to an owner's land may be awarded. *Nichols* v. *Commonwealth*, 331 Mass. 581, 584. We think that the injury here was "special and peculiar" within the meaning of this section. The injuries to the petitioners' buildings were confined only to their property and cannot be said to be common to the vicinage or of a general and public nature. See *Hyde* v. *Fall River*, 189 Mass. 439; *Wine* v. *Commonwealth*, 301 Mass. 451, 458. Compare *Nashua River Paper Co.* v. *Commonwealth*, 184 Mass. 279, 281; *Wyman* v. *Boston*, 282 Mass. 204, 207. Clearly the Commonwealth is liable for the reasonable cost of tying in and weatherproofing the exposed boundary walls. *Marsden* v. *Cambridge*, 114 Mass. 490.

A more difficult question is whether it is also liable for the water damage which occurred to the Webster building on November 23, 1953. We think it is so liable. The trial judge found that the water damage was "the inevitable result of the taking and construction of the highway." Therefore the case is governed by *Fifty Associates* v. *Boston*, 201 Mass. 585, 589–590, and not by *Belkus* v. *Brockton*, 282 Mass. 285, 290, an action of tort which involved a situation where the flooding was due to the negligence of the city and was not a necessary result of the construction of the public improvement. The case of *McSweeney* v. *Commonwealth*, 185 Mass. 371, relied on by the Commonwealth, is not in point, because in that case there was no statutory authority for an award of damages in the absence of a taking.

The Commonwealth also took exception to the trial judge's denial of its motion for a new trial. This motion raised no question of substance not hereinbefore discussed and its denial was not error.

Admittedly Webster is not entitled to recover under both petitions. Since we hold that it can recover under its second petition the entry must be: exceptions relating to Webster's second petition and to the Boyden petition overruled; finding for the petitioner in the first Webster petition vacated and petition dismissed.

*So ordered.*