**BOSTON EDISON COMPANY, Plaintiff, Appellant,**

v.

**CAMPANELLA & CARDI CONSTRUC-
TION COMPANY, Defendant,
Appellee.**

No. 5520.

United States Court of Appeals
First Circuit.

Nov. 30, 1959.

Finley H. Perry, Boston, Mass., with whom Johnson, Clapp, Ives & King, Boston, Mass., was on brief, for appellant.

Robert W. Cornell, Boston, Mass., with whom George E. Donovan and Badger, Pratt, Doyle & Badger, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a diversity action brought by plaintiff-appellant Boston Edison Company, hereinafter sometimes called Edison, to recover for damage to two transmission poles resulting from construction work done by the defendant contractor, hereinafter called Campanella, pursuant to a contract with the Department of Public Works of the Commonwealth of Massachusetts. Jurisdiction adequately appeared. The case was tried on an agreed statement of facts, which included a stipulation eliminating all questions of pleading. The Court dismissed the complaint, and Edison appealed.

It appeared from the agreed statement that sometime prior to 1954 the Commonwealth condemned a strip of land, hereinafter called the locus, for the construction of a limited access highway and overpass in the town of Burlington, Massachusetts. Adjacent to the locus was land of another, over which Edison had a lawful easement to erect and maintain a power transmission line, together with all appurtenant towers or poles and other necessary structures. At all material times Edison maintained the two poles here in issue pursuant to this easement. In condemning the locus no express taking was made with respect to the adjoining property or Edison's rights therein. The Department of Public Works thereafter prepared specifications for the construction of the roadway and overpass, and subsequently let a contract to Campanella for the erection of a stone and gravel embankment. Pursuant to the specifications Campanella excavated the surface soil, which was a soft and light peat, down to hardpan. Stone and gravel fill was then placed in the excavation and piled up until the embankment had been formed. There was no provision made for a retaining wall at the foot, it being contemplated that the natural angle of incidence would be steep enough so that all fill would remain within the boundaries of the locus. The fill did in fact remain within the locus, but because of its heavier weight, it pressed against the peat which lay outside of the limits of the excavation and compressed it, forcing some of the peat to slide along the hardpan under-surface across the boundary of the locus. This, in turn, compressed and moved the peat on the adjacent land where Edison had its easement, thereby unsettling and moving the two transmission poles from their foundations. It was agreed that Campanella in all respects followed the contract specifications, and performed the work called for in a careful manner.

In dismissing the action the court stated that the law of Massachusetts as to damage to land not included in a taking was that "an action of tort will not lie to recover damages which are incidental to the performance of a public work authorized by the legislature * * [because] injury to property of individuals incidental to this work is not unlawful * * *. [T]he injured party must seek relief in accordance with the statutory remedies providing for compensation of those whose property is taken or injured by the state in the exercise of its power of eminent domain." Consequently, the court held, a contractor doing public work will not be liable unless

he is found to have departed from the specifications, or to have carried on the work called for in a careless manner, neither of which situations, admittedly, obtained in the case at bar.

▮▮▮ • This was an incomplete statement of the law. It is true that if, in fact, recovery can be had under the statute authorizing the taking, the contractor may be protected to the extent stated by the district court. Dodge v. Essex County Commissioners, 3 Metc., Mass., 380; Perry v. Worcester, 6 Gray, Mass., 544 (*semble*). But in order to determine whether statutory recovery can be had in a given instance, at least two factors must be considered. First, not every condemnation statute makes provision for damages to lands not included in the actual taking. See Sullivan v. Commonwealth, 335 Mass. 619, 142 N.E.2d 347. In the case at bar there was such statutory authority. Mass.Gen.Laws (Ter.Ed. 1932) c. 81, § 7 (made applicable to limited access highways by c. 81, § 7C); Webster Thomas Co. v. Commonwealth, 336 Mass. 130, 138, 143 N.E.2d 216. Secondly, however, it is a well established principle of Massachusetts law that even when incidental damages are within the statutory purview this comprehends only those damages which are a necessary incident. This principle "presupposes that the public work thus authorized will be executed in a reasonably proper and skilful manner, with a just regard to the rights of private owners of estate. If done otherwise, the damage is not necessarily incident to the accomplishment of the public object, but to the improper and unskilful manner of doing it. Such damage to private property is not warranted by the authority under color of which it is done, and is not justifiable by it." Perry v. Worcester, supra, 6 Gray, Mass., at page 547. The legislative commitment, in other words, is no broader than what is necessarily involved. "Where * * * damage is not a necessary result, but occurs because of conduct of the municipality in performing or maintaining the authorized undertaking, there is no

legitimate taking of property by legislative mandate; there is tortious action which entitles the injured person to redress from the wrongdoer. The assumption is that the Legislature intends that the work will be so carried on, and so dealt with in maintaining it, that injury will be avoided." Belkus v. Brockton, 282 Mass. 285, 287, 184 N.E. 812, 813. Thus, in the Perry case, a tort action was held to lie where "the damage suffered by the plaintiffs was not necessarily occasioned by the building of a suitable bridge, but by building a bridge with water ways so narrowed and reduced that * * * [the water was set] back occasionally upon the plaintiffs' mills." Perry v. Worcester, supra, 6 Gray, Mass., at page 547. Conversely, in Webster Thomas Co. v. Commonwealth, supra, where recovery was allowed in a statutory proceeding, the court pointed out that the lower court had found the damages to be "the inevitable result of the taking and construction of the highway." 336 Mass. at page 139, 143 N.E.2d at page 221. See also Holbrook v. Massachusetts Turnpike Authority, 1958, 338 Mass. 218, 154 N.E.2d 605.

In the case at bar the parties stipulated that the Department of Public Works "knew or should have known that excavating the peat and replacing it with stones and gravel in large quantities would cause the peat to move which would, in turn, move the plaintiff's poles." In addition, the stipulation permitted the court to draw inferences. It seems to us an inescapable inference that there are various possible methods by which fill can be stabilized, as, for example, by the use of a retaining wall, so that encroachment upon distant property such as took place here would not occur. Campanella candidly so conceded at the argument. Hence the damage was not only foreseeable, but avoidable. However, the fact that this would have been possible does not mean that it would have been economically practicable, which is the Massachusetts test in this situation. In Todd v. Old Colony R.R., 194 Mass. 302, 80 N.E. 462, embankments constructed

over a brook by the defendant temporarily discharged silt affecting a lower riparian owner. Although there was evidence that this might, to some extent, have been avoided, defendant's experts testified that it would not have been "possible" to construct the embankments so as to prevent all discharges. The court said, in adopting their view, "When the witnesses testify that it is not possible to do a certain thing, such for instance as preventing the wash of the embankment, we do not understand them to mean that, considered merely as an engineering feat, it cannot be done, but they mean that the expense would be so disproportionate to the end to be reached as to make the proposed act from a business and common sense point of view impracticable." 194 Mass. at page 306, 80 N.E. at page 464. The court therefore concluded that a tort action was not the proper remedy since plaintiff had not shown that "the defendant has done any act not reasonably necessary and proper. Hence it has done no act not authorized by law." Ibid.

■ If the injury's avoidance in the case at bar was not economically prac-

ticable, its incidence was part of the contemplated taking, the Commonwealth was liable under the eminent domain statute, Mass.G.L. c. 81, § 7, supra, and Edison cannot recover in this action. If, on the other hand, the injury was due simply to negligence on the part of the Department of Public Works, it was not legislatively authorized, and the defendant cannot avail itself of such unwarranted act for protection. Although it is evident that the damage was foreseeable and avoidable, the stipulation is insufficient to permit a considered finding of whether it was avoidable within the test of economic practicability. This is quite apparently due, judging from the briefs, to the fact that the parties failed to realize the dimensions of the problem. While it might be possible by application of rules of burden of proof and burden of going forward with evidence to reach some kind of a decision on the present record, we do not feel that this would ensure a just result.* In clear instances a court has power to relieve parties of a stipulation entered into under a misapprehension of law, see, e. g., Delano v. Smith, 206 Mass.

* It is not even certain where these burdens lie. In Mellen v. Western R.R., 4 Gray, Mass., 301, plaintiffs brought an action of tort to recover damages to their land, which was flooded as a result of the construction of a road by the defendant. The defendant claimed in defense that the road had been authorized by statute and that therefore the plaintiffs' remedy was in a statutory proceeding. The court placed the burden on the defendant of establishing that the work was done reasonably and properly. In Flagg v. Worcester, 13 Gray, Mass., 601, a somewhat similar case, the court appeared to place the burden upon the plaintiff of proving the reverse. Accord, Wheeler v. Worcester, 10 Allen, Mass., 591, 605 (semble). In Morse v. Worcester, 139 Mass. 389, 2 N.E. 694, the burden of proof was not involved, but the court referred, with apparent approval, to the English cases holding there to be a presumption that what the municipal authorities did was lawful. However, although the point was not squarely raised in the later case of Aldworth v. Lynn, 153 Mass. 53, 26 N.E. 229, 10 L.R.A. 210, the court appeared to

endorse the rule of Mellen v. Western R.R., supra. One might draw the same conclusion from Peabody v. Boston & Providence R.R., 181 Mass. 76, 62 N.E. 1047. On the other hand, in Todd v. Old Colony R.R., supra, the court observed that the plaintiff had failed to show that "the defendant has done any act not reasonably necessary and proper." 194 Mass. at page 306, 80 N.E. 464. Mellen was cited in the opinion, but not mentioned on this point.

While there is much logic in the Mellen rule, from a practical standpoint it may well be better to recognize the presumption of lawfulness referred to by the court in Morse. Having in mind that Todd is the most recent expression we find on the subject, we conclude that the Massachusetts court would place upon the plaintiff the burden of establishing that an act, apparently lawfully authorized, was in fact improperly performed, and hence not within the authority. Whether in the case at bar the inferences to be drawn from the stipulation are sufficient to satisfy that burden we prefer not to decide.

**434**

365, 92 N.E. 500, 30 L.R.A.,N.S., 474, just as a new trial may be granted to prevent a miscarriage of justice. We accordingly remand the case to the district court to consider permitting the parties to vacate or amplify their stipulation or to take such other steps as the court may approve.

Judgment will be entered vacating the judgment of the District Court and remanding the case to that court for further proceedings not inconsistent with this opinion.