**Leisa YOUNG, in her capacity as Administratrix of the Estate of Cornel Young, Jr.**

**v.**

**CITY OF PROVIDENCE, et al.**

**C.A.No. 01–288ML.**

United States District Court, D. Rhode Island.

Feb. 11, 2004.

See also 2004 WL 254573.

Barry Scheck, Nicholas Brustin, Cochran, Neufeld & Scheck, LLP, New York, NY, Robert B. Mann, Esq., Mann & Mitchell, Providence, RI, for Plaintiff.

Joseph F. Penza, Jr., Olenn & Penza, Warwick, RI, Kevin F. McHugh, City of Providence Law Department, Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

LISI, District Judge.

On November 7, 2003, this Court issued an order to show cause why sanctions should not be imposed on counsel for plaintiff, Barry C. Scheck, Nick Brustin and Robert B. Mann.[1] That order addressed statements attributed to this Court as set forth in a memorandum of law which was filed by plaintiff's counsel on October 16, 2003. The memorandum was signed and, therefore, certified pursuant to Fed. R.Civ.P. 11 by Mr. Scheck, Mr. Brustin, and Mr. Mann. On December 15, 2003, the three respondent counsel appeared before this Court in response to the show cause order.

### Procedural History and Factual Background[2]

Mr. Scheck and Mr. Brustin were granted permission to appear in this matter pro hac vice pursuant to R.I. Loc. R. 5. Mr. Mann agreed to serve as local associate counsel. R.I. Loc. R. 5(c)(1). Having been admitted pro hac vice, Mr. Scheck and Mr. Brustin were obligated to comply with all local rules as well as the Rules of Professional Conduct of the Rhode Island Supreme Court as adopted by this court. R.I. Loc. R. 5(c)(2) requires counsel admitted pro hac vice to "fully and timely consult with, involve, and inform local associate counsel respecting all significant developments in the case." That provision also mandates that local associate counsel, "(a) sign and be responsible to the Court for the content of all pleadings, motions, and other papers filed or served in the case; (b) certify in all non-dispositive motions that counsel for the parties, including local associate counsel have conferred in good faith to attempt to resolve disputes before filing such motions; (c) attend all Court proceedings in the case; and (d) be responsible to the Court for the conduct of the case."

The purpose of the local rule is to ensure that all litigants who retain attorneys who are not members of this Court's bar are represented by competent counsel who will comply with all local rules, including the Rules of Professional Conduct of the Rhode Island Supreme Court. Those Rules of Professional Conduct are "the standard of conduct for all attorneys practicing before this Court." R.I. Loc. R. 4(d).

On August 14, 2003, this Court issued its standard "Trial Scheduling Order" which required counsel, inter alia, to provide the Court by September 19, 2003, with a list of trial exhibits which would be admitted as full exhibits without objection. On September 19, 2003, the Court conducted a

---

1. On December 16, 2003, this Court issued an amended order which corrected a procedural defect in the November 7, 2003 order. At oral argument, counsel for all respondents agreed to proceed under the amended order.

2. For a full recitation of the facts underlying the substantive litigation, the reader is directed to this Court's Memorandum and Order regarding defendants' dispositive motions issued on February 11, 2004.

final pretrial conference which all counsel attended. At that conference, the Court inquired as to whether counsel had reached agreement as to the admissibility of exhibits and whether they had a list of such exhibits to submit to the Court. Counsel stated that they had conferred about the exhibit list, but that it was not at that point finalized. Co-counsel for the defendant City of Providence, Joseph Penza, stated that there was a problem with a diagram of the shooting scene which he had only recently discovered. Mr. Penza did not elaborate on the problem with the exhibit. The Court reminded all counsel that they should continue to work together on the list of exhibits to be admitted without objection and to provide a copy of that list to the Court as soon as it was finalized.

On October 2, 2003, the Court held a hearing on several pretrial motions. After the hearing, the Court met with all counsel in conference and again inquired as to the status of the exhibit list. At that time, Mr. Penza advised the Court that he had secured a videotape taken at the scene shortly after the shooting and that the videotape, as well as the still photographs made from it, revealed an inaccuracy in the diagram.[3] Specifically, the position of the silver Camaro that had been operated by Aldrin Diaz was inaccurately depicted on Plaintiff's Exhibit 18A, a diagram of the parking lot of Fidas Restaurant.[4] Mr. Penza further explained that this newly-discovered inaccuracy was particularly problematic because the diagram had been used in grand jury proceedings and the depositions of several witnesses in the instant case. The Court suggested that counsel confer with each other and report back to the Court any agreement that

might be reached as to how to handle the problem described by Mr. Penza.

On October 7, 2003, after the jury had been selected, the Court held a side-bar conference with counsel. At that conference, Mr. Penza raised the issue of what demonstrative evidence plaintiff was intending to show during the opening statements, which were scheduled for the next day. Mr. Penza indicated he had objections to certain of those exhibits. Mr. Scheck then handed up to the Court a copy of a demonstrative exhibit which he intended to show to the jury during his opening statement. That demonstrative exhibit consisted of an outline of Dr. Fyfe's anticipated expert testimony on accepted police procedures. The Court ruled that plaintiff's counsel could show it to the jury over the Defendants' objection. Next, Mr. Scheck stated that he intended to show the jury a photograph of Mr. Young and Mr. Penza agreed that would be "fine." Mr. Brustin then mentioned the diagram of the Fidas' parking lot. Mr. Penza stated again that there was a problem with the position of the Diaz vehicle as depicted on the diagram. The Court suggested that counsel work together on a stipulation that would cure the inaccuracy. Mr. Scheck indicated that he would talk to Mr. Penza about the matter. The Court adjourned for the day.

On October 8, 2003, before the jury was brought in, the Court inquired of counsel whether they had reached any agreement with respect to the diagram. At that point in time, the parties had not agreed upon a stipulation to cure the inaccuracy of the diagram. The Court reiterated its previous ruling: "that unless that document, as-is, is admitted by agreement as a full

---

**3.** The videotape is Defendants' Exhibit CC for identification. At trial, an edited version of the videotape, Plaintiff's Exhibit 157, was admitted as a full exhibit.

**4.** The diagram itself has been designated as Plaintiff's Exhibit 18A. Plaintiff's Exhibit 18 is a transparent plastic overlay which is attached to the diagram (18A).

exhibit, you can't show it—or the alternative would be that counsel get together and put together a stipulation that would take care of the inaccuracy that both sides apparently agree to." Mr. Scheck requested an opportunity to confer with Mr. Penza, which request the Court granted. Before the Court recessed to give counsel time to confer on the matter, Mr. Scheck stated: "It has got to be an exhibit, because it is the diagram where Michael Solitro drew where he went. It is indispensable to my opening statement. I have planned the whole thing around it. I'm willing to engage in any stipulation that my colleagues want with respect to a comparison of the photographs and the diagram. I will do anything they want in regard to this, but I must use it for the opening." The Court then took a five-minute recess.

When the Court returned, the jury was brought in and the Court proceeded to give the jury preliminary instructions. At the conclusion of the preliminary instructions, the jury was informed that they would be taken on a view of the scene of the shooting. After the jury left the courtroom, counsel for both sides placed their objections to the Court's preliminary instruction on the record. The Court recessed and all counsel, the Court, and the jury proceeded to the view.

Upon returning to the courthouse from the view, the Court recessed for approximately 20 minutes. When the Court reconvened in the courtroom, counsel advised that they had entered into a written stipulation regarding Exhibit 18A. A portion of the stipulation was handwritten, reflecting the parties' revision of a previously prepared typewritten draft. The Court told counsel that the Court would read it to the jury before Mr. Scheck's opening. Once the jury was seated, the Court read the stipulation into the record. The stipulation provides as follows:

Exhibit 18A is a diagram of the scene at Fidas Restaurant prepared by a law enforcement agency other than the Providence Police Department and was used in the questioning of witnesses in a prior proceeding and in depositions in this case.

The parties have agreed that at the time of the shooting, the silver Camaro was actually located so that its right front fender was lined up with the far right-hand pole (as you look at Fidas) that is located in front of the foyer to Fidas Restaurant.

A typewritten version of the final stipulation was subsequently prepared and attached to Exhibit 18A.

The significance of the stipulation as it related to Exhibit 18A was, or should have been, obvious to counsel. The exhibit had been used during both Solitro's grand jury and deposition testimony. Solitro was asked to trace, on the transparency (Exhibit 18) attached to the diagram, the path he took when he left the "cover" of his police vehicle and proceeded toward the Diaz vehicle. Exhibit 18A, therefore, was not merely a diagram of the scene, it was the foundation for testimonial evidence from one of the key witnesses in the case. Further, the issue of Solitro's leaving "cover" was a primary consideration for plaintiff's expert's opinion that Solitro had violated accepted police practice by putting himself in a vulnerable position, thereby forcing the shooting of Cornell Young, Jr., by both Michael Solitro and Carlos Saraiva. Additionally, the position of the Diaz vehicle in relation to where Mr. Young was standing when he was shot was also an important fact for the jury's understanding of the events leading up to the shooting. The precise location of the Diaz vehicle at the time of the shooting was, therefore, a critical fact for the jury to have in order to understand and weigh the

testimony of both the percipient witnesses and plaintiff's expert.

At several points during the testimony of Solitro, Saraiva, and Officer Elizabeth Wajda, counsel for plaintiff asked questions that were designed to elicit testimony that would contradict the stipulated facts with respect to Exhibit 18A. The Court sustained defendants' objections and reminded counsel for the plaintiff that they had entered into a stipulation of fact, that those facts had been put before the jury, and that it was improper for plaintiff to attempt to elicit testimony that would contradict those stipulated facts. At one point, on October 9, 2003, during argument on one of defendant's objections to questions posed by plaintiff's counsel to Saraiva, Mr. Scheck argued "[the] stipulation is wrong."

On October 16, 2003, counsel for plaintiff filed a "Motion Requesting to be Relieved from the Stipulation Regarding Exhibit 18[A]." Dkt. No. 314. That motion was supported by an eight-page memorandum of law, filed at 9:32 a.m. *Id.* At 3:12 p.m. on October 16, 2003, Plaintiff filed a "corrected memorandum" in support of the motion.[5] Dkt. No. 316. In a footnote at page one of both documents, "Plaintiff ask[ed] the Court to accept the statements made in this memorandum as an offer of proof as (sic) the events described." The main thrust of plaintiff's argument in the motion and memoranda was that plaintiff had entered into the stipulation "under circumstances that created a 'manifest injustice'" and that the agreement was made "under a clear mistake." In the memoranda, plaintiff argued that she believed defendants had agreed to the admission of Exhibit 18[A], but that "it was only on the eve of opening statements, once plaintiff had prepared her entire opening based on that belief, that the defendants first said they would not stipulate to Exhibit 18[A], based on two new photographs they had found, Exhibits X and Y." Corrected Memorandum, Dkt. 316 at 1; *see* Memorandum, Dkt. 314 at 1 (containing identical statement as in Corrected Memorandum except that the word "stipulation" rather than "belief" was employed).

The memoranda also stated that on the night before opening statements, October 7, 2003, plaintiff proposed a stipulation which read as follows:

> Exhibit 18 is a diagram of the scene at Fidas Restaurant prepared by a law enforcement agency other than the Providence Police Department and was used in the questioning of witnesses in a prior proceeding and in depositions in this case. Exhibit 121 is a photograph made from a video tape made by television news of the scene on the night of the occurrence. The comparison of the photograph and the diagram depicted in Exhibit 18 indicates that the Camaro is further to the right of the entrance to Fidas as one faces Fidas, than depicted in the diagram.

Corrected Memorandum at 3; Memorandum at 3.

Both memoranda further stated that defendants did not respond to plaintiff's proposal and "[i]nstead, on October 8, minutes before the opening was to begin, defendants['] counsel informed plaintiff he would not sign the compromise stipulation ..." *Id.*

Plaintiff argued that she should be relieved from the stipulation as ultimately entered because it was "contrary to the truth" and because "the stipulation was not entered into based on compromise and fair bargaining." Corrected Memorandum at 7; Memorandum at 7. It is against these arguments that the statements attributed to the Court must be viewed. *See Navar-*

---

**5.** Copies of both pleadings are attached as exhibits to this Memorandum and Order.

*ro–Ayala v. Hernandez–Colon,* 3 F.3d 464, 467 (1st Cir.1993) ("the focus of Rule 11 is the court paper as a whole, not individual phrases or sentences construed separately or taken out of context") (quoting Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 9(D) at 133–34 (1989)).

Both memoranda contained the following statements:

> Plaintiff, moments before her opening, was informed by the Court she had to agree to defendants' stipulation.
>
> . . .
>
> The Court instructed plaintiff again that the exhibit could only be used under stipulation. Plaintiff again attempted to explain the confusion, but was instructed she had to stipulate. Facing no choice but to agree to whatever stipulation defendant insisted upon ... plaintiff signed what defendant provided.

Corrected Memorandum at 1–2, 3–4: Memorandum at 1, 3.

The first statement is false, whether read literally or in context. The Court *never* informed plaintiff she had to agree to defendant's version of the stipulation. The false statement attributed to the Court clearly bolsters plaintiff's argument that "the stipulation was entered under circumstances that created a 'manifest injustice.'" Indeed, at footnote 5 of the corrected memorandum, (footnote 4 in the

original memorandum), plaintiff raises the specter of "coercion", again arguing that she had no choice but to sign the stipulation proposed by defendants, "without any chance to review the photographs at issue."[6] Corrected Memorandum at 7; Memorandum at 7.

The second statement is also false. The Court never instructed plaintiff she *had to stipulate.* Once again, plaintiff's inclusion of that statement, read in context, conveys the message that the Court instructed plaintiff to sign the version of the stipulation proposed by defendants on October 8, 2003.

At the end of the trial day on October 16, 2003, Mr. Mann stated that a "corrected" version of the memorandum had been prepared and that it would be submitted later that afternoon. The Court then warned all three counsel who signed the initial memorandum that they should re-read it. Specifically, the Court told counsel that the Court was extremely disturbed by the statements attributed to the Court. Later that afternoon, the Court received the corrected memorandum and a letter signed by Mr. Scheck, Mr. Mann, and Mr. Brustin.[7]

On the morning of October 17, 2003, the Court took up plaintiff's motion to be relieved from the stipulation. During argument on the motion, after being directed

---

**6.** This assertion is also false since plaintiff had in her possession the relevant photographs at least as of September 26, 2003. Tr. excerpt (10/17/03) at 19.

**7.** The letter states:

> After the bench conference this afternoon, counsel for the plaintiffs (sic) have reviewed the memorandum which was filed and apologize for any misstatements. Please accept our apology.
>
> First, we obviously did not mean to make any misstatements. We spent a considerable amount of time trying to make the chronology with respect to defense counsel as accurate as possible.

> The instructions of the Court were clear exhibits had to be exchanged and approved by the Court for opening statements prior to trial and plaintiff thought that we had an agreement with the defense to this effect concerning exhibits 18 and 18a and 140. At the last moment, we found out we were wrong. In our motion, we have attempted to accept responsibility for what we did; we do not seek to shift responsibility to the Court, and if we have created a contrary impression, we are sorry. The thrust of our motion is that the stipulation was entered into as a result of confusion and mistake.

by the Court to the false statements attributed to the Court, Mr. Scheck admitted that the Court "did not say that we had to agree" and that the Court "did not in any way order us to go along with the stipulation." Tr. excerpt (10/17/03) at 7, lines 23–25; p. 8, line 1.

During argument on the motion, Mr. Penza advised the Court of additional inaccuracies in the factual representations made by plaintiff in the memorandum. Mr. Penza advised that both he and Mr. Mann received a copy of the videotape (Exhibit CC) from the Department of Attorney General on September 24, 2003. Tr. excerpt (10/17/03) at 18. Mr. Penza further advised that on either September 25, or September 26, he received a phone call from Mr. Mann regarding the videotape. *Id.* At that time, Mr. Penza spoke with Mr. Brustin about the videotape and Mr. Penza advised Mr. Brustin about the problem with the location of the cars. *Id.* at 19. Mr. Penza then had photographs

made from the videotape. (Exhibits X and Y) Mr. Penza provided copies of those photographs to plaintiff's counsel on September 26. *Id.*

These facts flatly contradict plaintiff's claim that "Defendant informed plaintiff on the day of jury selection, October 7, 2003, that they were not agreeing to Exhibit 18 and 18A. Defendant *for the first* time informed plaintiff that based on two photographs, Exhibits X and Y, that they believe the Camaro might have been located further to the right of Fidas Restaurant." Corrected memorandum at 3; Memorandum at 2. (emphasis added).

The Court denied the motion for the reasons set forth on the record on October 17, 2003.[8] At the end of the trial day on October 17, 2003, the Court exercised its discretion under Local Rule 5(c)(3) and revoked the pro hac vice admissions of Mr. Scheck and Mr. Brustin for their having submitted the memoranda containing false statements.[9] After the dismissal of Mr.

8. Plaintiff's second ground for seeking relief from the stipulation (that "the agreement was made under a clear mistake") was rejected by the Court because the "mistake" resulted not from new evidence that surfaced after the parties made their agreement, but rather from plaintiff's counsels' failure to carefully review the evidence that had been in their possession from September 24, 2003 (Exhibit CC—the videotape). That videotape was made very shortly after the shooting. This fact should have been self-evident because the video contains several seconds of footage showing rescue workers with Mr. Young at the scene and police and rescue personnel assisting in lifting him into an ambulance. Exhibits X and Y were still photos made from the videotape. In the videotape and the still photographs, the Diaz vehicle is clearly depicted in the location described in the stipulation entered into by the parties. In addition, the Diaz vehicle is clearly shown equipped with a black "nose protector" which covered the entire front grille area. Any "confusion" on the part of plaintiff's counsel arose from plaintiff's counsels' *assumption* that a car depicted in Exhibits 137, 138, and 139 was the Diaz vehicle. Those photographs were taken *after* Mr.

Young's body had been removed from the scene. This fact is also self-evident. Exhibits 137,138, and 139 depict the area directly in front of Fidas Restaurant and clearly show a blood spot on the ground where Mr. Young fell. By the time these photographs were taken, Mr. Young's body had been removed by rescue personnel. The car depicted in Exhibits 137, 138, and 139, although silver in color like the Diaz Camaro, did not have the black nose protector that the Diaz vehicle was equipped with. Plaintiff's counsel did not present any witness to testify about Exhibits # 137, 138, and 139, and apparently they did not depose the photographer to determine precisely when those photographs were taken. Had counsel for plaintiff studied these exhibits (all of which they had as of September 26, 2003), counsel would have, and should have, known that the stipulation entered into was absolutely correct. The only "mistake" was counsels' failure to carefully review the evidence which they had in their possession long before they agreed to the stipulation.

9. Local Rule 4(e)(1) permits but does not require the district court to refer a matter of

Scheck and Mr. Brustin, Mr. Mann continued to represent plaintiff's interests at trial pursuant to his obligations under R.I. Loc. R. 5(c).

After the jury responded to the special interrogatories submitted, the Court granted several dispositive motions filed by defendants. Those rulings are set forth in a separate memorandum and order. On November 7, 2003, this Court issued the order to show cause which is the subject of this memorandum and order.

### Discussion

■ Fed.R.Civ.P. 11 provides in pertinent part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

. . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

This subdivision requires the lawyer to "conduct a reasonable inquiry into . . . the facts before signing [a] pleading[ ]"; i.e. the rule requires the attorney "to 'stop and think' before initially making legal or factual contentions." Fed.R.Civ.P. 11, Advisory. Comm. Notes, 1993 Amend. The rule "imposes upon an attorney the affir-

mative duty to investigate the facts alleged in any pleading, motion or paper prior to subscribing to it." *Nault's Automobile Sales v. American Honda*, 148 F.R.D. 25, 35 (D.N.H.1993), *overruled on state law grounds by Averill v. Cox*, 145 N.H. 328, 761 A.2d 1083 (2000). "[T]he central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

■ As set forth above, viewed in the context of the memoranda in which they are contained, both statements attributed to the Court are false. Moreover, these false assertions are significant in that their inclusion in pleadings where plaintiff argued that she entered into the stipulation "under circumstances that created a 'manifest injustice' " purportedly inform the public and the appellate court that the trial court improperly ordered plaintiff to enter into a stipulation of defendant's choice.

This Court never made the statements attributed to it. Mr. Scheck, on October 17, 2003, during argument on the Motion admitted that the Court did not make the statements attributed to the Court in plaintiff's memoranda. The respondents do not contend that there was an evidentiary basis for one or both of plaintiff's assertions when either memoranda was filed. In sum, the assertions were devoid of evidentiary support when made and no reasonable attorney in respondents' position would have concluded otherwise. *Nyer v. Winterthur Int'l*, 290 F.3d 456, 461 (1st Cir.2002).

---

revocation of a pro hac vice admission to a panel composed of all of the active judges of this court. *Obert v. Republic W. Ins. Co.*, 264 F.Supp.2d 106, 111 (D.R.I.2003). It is within the discretion of the trial judge to determine that the proper administration of justice requires revocation of an attorney's pro hac

vice status. *Id.* "A trial judge is under a duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct." *U.S. v. Dinitz*, 424 U.S. 600, 612, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (Burger, C.J., concurring).

At oral argument on the Order to Show Cause, respondents, through counsel, advised the Court that the memorandum and corrected memorandum had been drafted by a young associate employed by Cochran, Neufeld and Scheck. In response to a direct question from the Court as to which of the respondents had *primary* responsibility for supervising the young associate, all three stated through counsel that they equally shared that responsibility.

This response demonstrates counsels' utter failure to take the necessary care to ensure that their pleadings complied with the provisions of Rule 11. First, the respondents assigned the responsibility of preparing the memoranda to an associate who they knew had not participated in any of the bench conferences or chambers conferences during which the Court addressed the admission of Exhibits 18 and 18A, and who respondents, therefore, knew had no first-hand knowledge of the pertinent facts. Second, the respondents failed to assign among themselves one person who would have *primary* responsibility for reviewing the associate's drafts. Third, the respondents stated that they had no recollection that any of them told the associate that the Court stated plaintiff must accept the defendant's version of the stipulation. And fourth, although all stated they read the memoranda before they signed and filed them, not one of the respondents took steps to correct the false assertions before either memorandum was filed with the Court. From these assertions, the Court concludes that respondents failed in their responsibility to conduct a "reasonable inquiry" into the truth of the factual assertions set forth in the memoranda.

Taking all of the arguments made on behalf of respondents and all of the facts as set forth herein into account, the Court makes the following findings:

a. That the two statements attributed to the Court as set forth *supra* were false when made in plaintiff's memoranda.

b. That the two statements attributed to the Court were material in that they purported to support plaintiff's contention that counsel entered into the stipulation "under circumstances that created a manifest injustice."

c. That all three respondents signed the memorandum and the corrected memorandum submitted on October 16, 2003.

d. That although counsel submitted a letter to the Court on October 16, 2003, wherein counsel "apologize[d] for any misstatements," counsel never moved to withdraw the memoranda or to retract the false statements attributed to the Court.

e. That the memorandum was written by an associate in the firm of Cochran, Neufeld & Scheck.

f. That the associate who wrote the memorandum had not participated in any of the conferences with the Court where the problem with Exhibit 18A had been discussed.

g. That the respondents made no effort to secure a transcript of the Court's rulings with respect to Exhibit 18A.

h. That no one of the respondents involved took primary responsibility for directing or reviewing the associate's work on the memoranda.

This Court finds that the submission of the memorandum and corrected memorandum containing the misrepresentation of the Court's orders regarding Exhibit 18A violates. Rule 11(b)(3).

Having determined that respondents violated Rule 11, the Court must now consider what sanctions, if any, ought to be imposed. Rule 11 provides that if "the court determines that subdivision (b) has been violated, the court may . . . impose an

appropriate sanction upon the attorneys, law firms or parties that have violated subdivision (b) or are responsible for the violation." Fed.R.Civ.P. 11(c). Further, any sanction imposed "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2)

■ Permissible sanctions under Rule 11 include monetary, as well as non-monetary, sanctions. *Id. See Frantz v. U.S. Powerlifting Fed'n,* 836 F.2d 1063, 1066 (7th Cir.1987) (noting that a "court may impose a penalty as light as a censure and as heavy as is justified-a fine that may exceed the amount of fees incurred by the opposing party"). The tailoring of an appropriate sanction lies within the discretion of the district court. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. at 399, 110 S.Ct. 2447. However, the district court must impose the least severe sanction adequate to serve Rule 11's goal of deterrence. *Vollmer v. Publishers Clearing House,* 248 F.3d 698, 710–711 (7th Cir.2001) (citation omitted). A nonmonetary sanction such as an attorney reprimand, censure or admonition may serve as a less severe alternative to monetary sanctions. *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 420 (6th Cir.1992); *Thomas v. Capital Sec. Servs.,* 836 F.2d 866, 878 (5th Cir.1988).

The filing of a pleading containing false assertions of fact is the most serious violation of an attorney's "duty of candor" to the Court. Fed.R.Civ.P. 11, Advisory Comm. Notes, 1993 Amend. (Rule 11 "emphasizes the duty of candor"). In this case, counsel recklessly and carelessly submitted the offending pleadings without taking the steps necessary to fulfill their "obligation to the court to refrain from conduct that frustrates the aims of Rule 1." *Id.* The mandate of Rule 11, in a very real sense, is the cornerstone of our system of justice. When lawyers sign and file a pleading, they attest to the veracity of what they say and the court and opposing counsel should be able to rely on those representations. When lawyers fail to fulfill this important responsibility, they do violence to Rule 1, because every pleading they file becomes suspect, causing the Court and opposing counsel to search for the truth and take action necessary to set the record straight. In short, respondents' submission of a pleading containing false assertions of fact frustrates the "just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1.

### Barry C. Scheck

■ Mr. Scheck was admitted pro hac vice in this case. He served as lead trial counsel. Mr. Scheck has been a member of the New York bar since 1975. According to his affidavit, he has been admitted by many courts to appear pro hac vice. In his affidavit, he asserts that he has "never knowingly made a misrepresentation of fact or law to any court or judge, and I have not done so in this case." What Mr. Scheck fails to appreciate, however, is that by signing and filing the memoranda containing the two false statements regarding the orders of this Court, he *did* make misrepresentations of fact to this Court.

Mr. Scheck knew full well that this Court never told plaintiff's counsel that plaintiff "had to agree to defendant's stipulation." This was no insignificant factual assertion. It was embedded in a pleading wherein plaintiff argued that she entered into the stipulation "under circumstances that created a 'manifest injustice.'" While the Rules of Professional Conduct provide that counsel must represent their clients zealously, those Rules and Rule 11 make clear that the lawyer has a duty of candor to the tribunal. He may not falsify or fabricate facts to suit his purpose, no matter how noble the cause.

Here, Mr. Scheck assigned the drafting of the memorandum and corrected memorandum to a young associate who Mr. Scheck knew had no first-hand knowledge of the pertinent facts. Having done so, Mr. Scheck utterly failed in his obligation to make sure that *his* pleadings contained only those factual assertions that were true to the record. While it is true that the offending memoranda were drafted and filed during trial, this fact does not relieve Mr. Scheck of his Rule 11 responsibility. Indeed, it is just as important *during* trial to comply with the dictates of the Rule since opposing counsel and the Court are also busy attending to other matters and might not have the time to scrutinize a violative pleading. Unnoticed, such misrepresentations remain in the public record of the case to mislead the public and the appellate courts.

This Court finds that Mr. Scheck's Rule 11 violation must be sanctioned.

In the case of Mr. Scheck, this Court imposes the sanction of a public censure. This Court is aware of the fact that Mr. Scheck will be required to disclose this sanction to other courts before whom he seeks to practice pro hac vice, and that other courts may consider the fact of this sanction as a reason to deny his admission pro hac vice. Here, however, the blatancy of the Rule 11 violation and Mr. Scheck's continued insistence that he has done nothing wrong require action from this Court which will address the violation itself and serve to impress upon Mr. Scheck the need to give more than lip service to his ethical obligations to his clients, opposing parties, and the courts in which he practices. The sanction imposed here should also serve as a deterrent to others similarly situated to refrain from the conduct described herein. A public censure is the least severe sanction which will accomplish these objectives.

## Nick Brustin

■ Mr. Brustin was admitted to the bar in 1995. He has been an associate at Cochran, Neufeld & Scheck since February, 2000. Mr. Brustin was admitted pro hac vice in this matter shortly after it was filed. Although Mr. Brustin served as lead counsel in this case up to the time of trial, he assumed a second chair position upon Mr. Scheck's admission pro hac vice. Mr. Brustin has also submitted an affidavit as well as affidavits from several attorneys who attest to his character and reputation as an honest lawyer. Mr. Brustin, however, like Mr. Scheck, signed a pleading containing a false assertion of fact. Unlike Mr. Scheck, however, Mr. Brustin is a relatively young attorney who had "never tried a case of this kind before." (Dkt.179) It was readily apparent to this Court that Mr. Brustin was taking direction from Mr. Scheck during the course of trial.

Throughout the pretrial litigation of this matter, Mr. Brustin appeared before the Court on numerous occasions. In all of those appearances, Mr. Brustin maintained a professional and respectful demeanor. In his affidavit, Mr. Brustin expresses his concern that any sanction imposed by this Court will affect his career. He further advises that the revocation of his pro hac vice admission in this case has already caused him great embarrassment and personal distress.

In view of these facts, this Court is of the opinion that no sanction of Mr. Brustin is warranted or necessary to discourage him from engaging in similar conduct in the future. He should be admonished, however, that when he signs a pleading, it is his professional responsibility to ensure that the assertions made are truthful, no matter whether he is lead counsel or second chair. Rule 11 makes it *his* personal and professional obligation to "stop and

think" before he submits a pleading to the court.

### Robert B. Mann

█ Mr. Mann appeared in this case as local counsel. Under R.I. Loc. R. 5, he had the obligation to sign all pleadings and was therefore responsible to the Court pursuant to both the local rule and Rule 11 for the content of the pleadings. On the morning of October 17, Mr. Mann asked for a chambers conference during which he stated that after the Court recessed on October 16, 2003, he reread the memorandum and concluded that a second corrected memorandum should be filed. No second corrected memorandum was filed, however, because, as Mr. Mann explained, there was "not enough time." This Court takes Mr. Mann's statement as his acknowledgment that the memorandum contained misrepresentations which should have been addressed in a corrective pleading.

This Court expressed its opinion at that time, that the filing of such an offending pleading was out of character for Mr. Mann. This Court based that opinion on nearly thirty years of experience with Mr. Mann in a variety of professional capacities.

Mr. Mann also submitted a declaration as well as affidavits from a number of members of the Rhode Island bar who attest to his longstanding reputation for honesty and integrity. This Court finds that any violation of Rule 11 by Mr. Mann was the result of inattention to the factual assertions set forth in the memoranda.

The Court is well familiar with Mr. Mann's reputation for honesty, integrity and professionalism. His only error in this case was to affix his signature to a document that was poorly drafted by a young associate whose supervising partner failed to fulfill his professional responsibilities. Any sanction of Mr. Mann would serve no purpose here. He fully understands his professional responsibilities, including his obligations under Rule 11. The Court finds that an imposition of a sanction is not necessary to compel Mr. Mann's full future compliance with these obligations.

### Conclusion

Judges have the ultimate responsibility to ensure that the courts remain an even playing field for *all* litigants. This is a responsibility the Court must never abdicate for to do so would impugn the integrity of the judicial process itself. Moreover, the Court's failure to address attorney misconduct would give the appearance of official condonation of such behavior. This Court will neither tolerate nor permit attorney misconduct as occurred here.

The issuance of this order brings this matter to a close. The Court has exposed the misconduct and sanctioned the responsible attorney. The publication of this order shall serve as a public censure of Barry C. Scheck for his violation of Rule 11 as herein set forth.

SO ORDERED.

### EXHIBIT

### *PLAINTIFF'S MOTION REQUESTING TO BE RELIEVED FROM THE STIPULATION REGARDING EXHIBIT 18*

Plaintiff respectfully requests, as described in the attached Memorandum that the parties be relieved of the stipulation dated October 8, 2003 regarding Exhibit 18 and 18a, based on clear mistake and manifest injustice. Plaintiff asks for a hearing on this motion.

### EXHIBIT

### *PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION REQUESTING TO BE RELIEVED FROM THE STIPULATION REGARDING*

### EXHIBIT 18 [1]

Plaintiff respectfully requests that the parties be relieved of the stipulation dated October 8, 2003 regarding Exhibit 18. The stipulation was entered under circumstances that created a "manifest injustice" and it is now evident that "the agreement was made under a clear mistake." *T I Federal Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995). Plaintiffs believe there had been an agreement between the parties to an exhibit list on Sept. 19, 2003, weeks before trial, that Exhibit 18, a chart of the scene prepared by the Attorney General's office based on crime scene measurements, could be used, just as it had been used throughout depositions. It was only on the eve of opening statements, once plaintiff had prepared her entire opening based on that stipulation, that defendants first said they would not stipulate to Exhibit 18, based on two new photographs they had found, Exhibits X and Y. Plaintiff, moments before her opening, was informed by the Court she had to agree to defendants' stipulation. Plaintiff was genuinely confused about the import of photographs X and Y. Plaintiffs opening relied critically on using that exhibit to explain events to the jury. In this state of confusion and uncertainty, plaintiff felt little choice but to accept any stipulation defendant provided. Subsequent testimony and review of evidence, including Solitro's testimony to the contrary and close-up photographs, make clear that this stipulation, entered into under such difficult circumstances, is patently contrary to the facts.

Plaintiff does not question defendant counsel's integrity or that they acted in good faith. The law is that regardless, plaintiff should be relieved of a stipulation entered into under circumstances indicating a clear mistake and that creates a manifest injustice. The jury should be entitled to weigh the evidence and determine the truth, without being mislead.

Plaintiff entered into a stipulation regarding Exhibit 18 and 18a, a chart with an overlay depicting the scene of the Young shooting, only minutes before providing an opening statement on October 7, 2003. Exhibit 18 and 18a is a chart with an overlay that was prepared by the Attorney General's office based on crime scene measurements taken January 28, 2000 at Fidas Restaurant, and that had been used throughout the depositions in this case without objection. Plaintiff believed that defendants had already stipulated to that Exhibit. Plaintiff and defendant met prior to the Sept. 19 pre trial conference, and plaintiff believed had agreed to a typed list of exhibits, including Exhibits 18 and 18a. Moreover, it was defendant that included in its list of exhibits photos of the scene, including Exhibit 140 to which they now object. Plaintiff relied on what it thought was defendants' stipulation made weeks before trial, and had prepared her entire opening around Exhibit 18 and 18a. Without a visual aide depicting the scene, the jury would have difficulty understanding the positioning of the various actors, especially Solitro.

Defendant informed plaintiff on the day of jury selection, October 7, 2003, that they were not agreeing to Exhibit 18 and 18a. Defendant for the first time informed plaintiff that based on two photographs, Exhibits X and Y, that they believe the Camaro might have been located further to the right of Fidas restaurant. Plaintiff tried to explain to the Court that any issue as to the consistency of the photos with

---

**1.** Plaintiff asks the Court to accept the statements made in this memorandum as an offer of proof as the events described.

each other and with the diagram goes to weight, and that defendant had previously agreed to plaintiff using the chart. The Court told plaintiff that the Exhibit could only be used in openings if stipulated to.

Where the photographs seemed inconsistent, on October 7, the night before opening statements, plaintiff suggested a compromise, and proposed a stipulation stating that there was conflicting evidence as to the accuracy of Exhibit 18. Plaintiff proposed a stipulation stating:

Exhibit 18 is a diagram of the scene at Fidas Restaurant prepared by a law enforcement agency other than the Providence Police Department and was used in the questioning of witnesses in a prior proceeding and in depositions in this case. Exhibit 121 is a photograph made from a video tape made by television news of the scene on the night of the occurrence. The comparison of the photograph and the diagram depicted in Exhibit 18 indicates that the Camaro is further to the right of the entrance to Fidas as one faces Fidas, than depicted in the diagram.

Defendants did not respond that night to plaintiff's stipulation. Instead, on October 8, minutes before the opening was to begin, defendants counsel informed plaintiff he would not sign the compromise stipulation, though plaintiff pointed out that Exhibits 137–140 appeared to indicate Exhibit 18 and 18a was accurate. The Court instructed plaintiff again that the exhibit could only be used under stipulation. Plaintiff again attempted to explain the confusion, but was instructed she had to stipulate. Facing no choice but to agree to whatever stipulation defendant insisted upon, and literally facing a last minute choice, also fearing the jury would be utterly confused by any description of the events of Jan. 28, 2000 without reference to some easy to understand diagram of the scene, plaintiff signed what defendant provided. Plaintiff signed a stipulation, stating:

Exhibit 18a is a diagram of the scene at Fidas Restaurant prepared by a law enforcement agency other than the Providence Police Department and was used in the questioning of witnesses in a prior proceeding and in depositions in this case.

The parties have agreed that at the time of the shooting, the silver Camaro was actually located so that its right front fender was lined up with the far right-hand pole (as you look at Fidas) that is located in front of the foyer to Fidas Restaurant.

Again, at this time, plaintiff believed defendants' photos were unclear, but attributed no significance to defendant's assertion. Since that time, however, it is clear from Exhibits 137–140 and testimony (before trial) of Solitro and others that Exhibit 18 and 18a is accurate. Upon examination, plaintiff has found that clear photographs taken minutes after Cornel Young's shooting show the Camaro next to the first pole outside the door to Fidas, and not all the way to the right, by the third pole. *See* Exhibits 138, 139, 140. Again, each of those photographs, were ones *defendants* included on their exhibit list on September 19, 2003.

Further, maintaining this stipulation is particularly inappropriate where plaintiff is already entitled to question Solitro on this precise issue. Solitro specifically testified at the grand jury that the Attorney General's chart is accurate as to the position of the Camaro. Solitro stated:

Q: Now, you obviously then see that vehicle drawn in already on the diagram, correct?

A: Yes.

Q: Does that vehicle correspond to your recollection of where the vehicle was that this man was headed for?

A: To the best of my knowledge, that's where the—the silver Camaro was placed.

Q: OK. In your own memory, do you have any difference in your mind about either the position of the car, left or right, whether it's too far or too close to the restaurant, whether it should be on less or more of an angle, or is that how you remember it?

A: That's how I remember it.

Solitro, Grand Jury at p. 33. In light of this evidence, it is evident the stipulation was entered under a clear mistake and that it would be unjust not to relieve the parties of it.

The jury should have to labor under such a "clear mistake" and feel it has to weigh this evidence as against the Stipulation regarding Exhibit 18. The jury will only be confused. The jury is entitled to weigh all of the evidence, including witness testimony and Solitro's testimony, Exhibits X and Y and Exhibits 138, 139, and 140 taken close to the Camaro.

Defendants are free to advance their theory in the face of facts to the contrary. No prejudice exists if the parties are relieved from the stipulation. After all, until the night before openings, defendants had agreed to using not just Exhibit 18 and 18a, but to the photos to which they now object. Defendants should have been permitted to withdraw their prior stipulation both to Exhibit 18, and to the photographs in Exhibits 138, 139, and 140, which they agreed to on Sept. 19, 2003. While plaintiff relied on being able to use Exhibit 18, defendant could not have relied on being able to obtain a last-minute stipulation just before openings.

A stipulation is not in any way "absolute." *T I Federal Credit Union v. Del-Bonis*, 72 F.3d 921, 928 (1st Cir.1995). It is a commonplace that "In our judicial system, [s]tipulations fairly entered into are favored. Factual stipulations tend to expedite a trial and eliminate the necessity of much tedious proof." *Id.* (citations omitted, quoting *Burstein v. United States*, 232 F.2d 19, 23 (8th Cir.1956)). Plaintiff appreciates the convenience of stipulating to evidence that is cumulative and that is truly not in dispute. Stipulations are intended to make a jury's job easier by eliminating extraneous evidence. They are not permitted to mislead the jury as to crucial matters. There is no question that the location of the Camaro in relation to the blood pool where Cornel Young, Jr. fell is not "tedious proof" but is instead critical as to where Cornel Young was standing when shot, whether he could have been walking, and what his actions were just prior to being shot. This evidence is in no way undisputed or extraneous.

A manifest injustice would result if plaintiff is required to be bound by a stipulation, entered into under such circumstances indicating clear mistake, and where the stipulation is so contrary to the facts which are so critical the jury's decision in this case.

Learning during a trial that a stipulation is contrary to the facts and "clearly mistaken", creates a manifest injustice making relief proper.[2] As the First Circuit has

---

**2.** Where parties did not discover until five days into trial that a person stipulated to be a registered nurse was in fact not registered, it trial court properly to relieved plaintiff of stipulation; "the manifest injustice to plaintiffs of having to proceed on the basis of a clearly mistaken stipulation as to such an important factual matter warranted the exercise of the trial court's discretion under Rule 16 of the Federal Rules of Civil Procedure." *Stahlin v. Hilton Hotels Corp.*, 484 F.2d 580, 584 (7th Cir.1973). See *Central Distributors, Inc. v. M.E.T., Inc.*, 403 F.2d 943, 946 (5th Cir.1968) ("A stipulation of counsel originally

explained:

> Case law is clear that "a stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may inflict a manifest injustice upon one of the contracting parties." *Id.* [*Marshall v. Emersons Ltd.,* 593 F.2d 565] at 568 [(4th Cir.1979)]. Parties will usually be relieved of their stipulations where it becomes evident that "the agreement was made under a clear mistake." *Brast v. Winding Gulf Colliery Co.,* 94 F.2d 179, 180 (4th Cir.1938).

*DelBonis,* 72 F.3d at 928. "Even when stipulations concern facts rather than law, courts traditionally retain the power to relieve parties from them on terms that are just." *U.S. v. Teeter,* 257 F.3d 14, 27 (1st Cir.2001). As Judge Boudin has explained, the rule as to relieving parties from a stipulation is "in a nutshell, that good reason must exist and that relief must not unfairly prejudice the opposing party or the interests of justice." *American Honda Motor Co. v. Richard Lundgren, Inc.,* 314 F.3d 17, 21 (1st Cir.2002).

Indeed, none other than Chief Justice John Marshall has held:

> But this court is also of opinion that if the agreement was made under a clear mistake, the claimants ought to be relieved from it, where it could be done without injury to the opposite party. If a judgment be confessed under a clear mistake, a court of law will set that judgment aside.

*The Hiram,* 14 U.S. (1 Wheat.) 440, 4 L.Ed. 131 (1816).[3]

Further, stipulations are understood in contract law terms. "As in contract law though, rules limiting litigants to trial stipulations are not absolute." *DelBonis,* 72 F.3d at 928. Here the stipulation was not entered into based on compromise and fair bargaining. Defendants changed their position, and indeed withdrew their prior stipulation on the eve of opening statements, and then failed to respond to plaintiff's proposed compromise stipulation until minutes before openings. Under the circumstances, plaintiff had no choice but to sign a stipulation, without any chance to review the photographs at issue.[4]

What is clear now, is that plaintiff can not in good faith stipulate to something that is contrary to the truth. A stipulation may not be entered as to patently untrue facts. Plaintiff respectfully requests permission that the parties be relieved from this stipulation. It has become evident, based upon the facts, that "the agreement was made under a clear mistake." *DelBonis,* 72 F.3d at 928. The purpose of a stipulation is to expedite a trial and to avoid unnecessary proof of peripheral factual matters. However, here, the stipulation is contrary to the facts, and can only present evidence that is inaccurate to the jury. The purpose of a stipulation is to ease and make more efficient presentation of the truth to the jury, not to mislead the jury. The stipulation will inflict an "injustice" on plaintiff, and relieving the parties of it will merely allow the jury to decide; it

---

designed to expedite a trial should not be rigidly adhered to when it becomes apparent that it may inflict manifest injustice upon one of the subscribers thereto.")

**3.** It is to avoid such injustice that Fed. R. Civ. Pro. Rule 16(e) provides a Court with discretion to alter a pretrial order to prevent "manifest injustice." Here, defendant did agree to

the exhibit pre-trial; it was only their about face on the eve of openings that created the injustice.

**4.** 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5194 (1978) ("courts will look at the facts carefully to see that one litigant has not been coerced into the stipulation.")

will not prejudice defendant. Plaintiff knowing now that the stipulation is incorrect, has an obligation to the Court to request relief from it.

Both parties should instead use the photographs stipulated and in evidence, and testimony of witnesses to present facts to the jury. In doing so, the jury can weigh whether the Attorney General's crime scene measurements were accurate and where the automobiles were located. The jury will simply be entitled to weigh, as they are always entitled to do, the evidence for themselves, in order to determine the truth.[5]

Thus, based upon the above long standing Supreme Court and First Circuit law; the clearly mistaken circumstances of the stipulation's signing; where plaintiff was confused by the evidence and unlike defendant, misapprehended its significance; and where subsequent evidence shows it is clearly mistaken and will mislead the jury, plaintiff respectfully requests relief from the stipulation as to Exhibit 18.[6]

---

**5.** Michael H. Graham, Handbook of Federal Evidence § 403.1, at 261–62 (4th ed. 1996) ("In evaluating the incremental probative value of the proffered evidence, the fact that the opponent has offered to stipulate or is not disputing the proposition for which the evidence is being offered should be considered. However, the fact that the proposition is not being disputed is not alone dispositive; the proponent of the evidence is entitled to have the court also consider the fair and legitimate weight introduction of the evidence would have upon the trier of fact.").

**6.** For another First Circuit case on point, *see Boston Edison Co. v. Campanella & Cardi Construction, Co.*, 272 F.2d 430, 434 (1st Cir. 1959), where the Court "remand[ed] the case to the district court to consider permitting the parties to vacate or amplify their stipulation or to take such other steps as the court may approve." There, the Court reversed because a stipulation the parties sentered into was based on a misapprehension, and would not

---

EXHIBIT

### PLAINTIFF'S CORRECTED MEMORANDUM IN SUPPORT OF MOTION REQUESTING TO BE RELIEVED FROM THE STIPULATION REGARDING EXHIBIT 18[1]

Plaintiff respectfully requests that the parties be relieved of the stipulation dated October 8, 2003 regarding Exhibit 18. The stipulation was entered under circumstances that created a "manifest injustice" and it is now evident that "the agreement was made under a clear mistake." *T I Federal Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995). Plaintiffs believe there had been an agreement between the parties to an exhibit list on Sept. 19, 2003, weeks before trial, that Exhibit 18, a chart of the scene prepared by the Attorney General's office based on crime scene measurements, could be used, just as it had been used throughout depositions. It was only on the eve of opening statements,

---

"ensure a just result." *Id.* at 433. The parties, in a tort action regarding damage to two utility poles, stipulated that "the Department of Public Works 'knew or should have known that excavating the peat and replacing it with stones and gravel in large quantities would cause the peat to move which would, in turn, move the plaintiff's poles." *Id.* at 432. However, this stipulation was not dispositive and found to be misleading to a jury; it implied that the damage to the telephone poles was inevitable and was avoidable. This inference was harmful, because under tort law, the defendant had no obligation to use alternative means of excavation that were economically impractical. Thus, the parties there clearly "failed to realize the dimensions of the problem" and the Court relieved the parties of the stipulation. *Id.* at 433.

**1.** Plaintiff asks the Court to accept the statements made in this memorandum as an offer of proof as the events described.

once plaintiff had prepared her entire opening based on that belief, that defendants first said they would not stipulate to Exhibit 18, based on two new photographs they had found, Exhibits X and Y.[2] Plaintiff, moments before her opening, was informed by the Court she had to agree to defendants' stipulation. Plaintiff was genuinely confused about the import of photographs X and Y. Plaintiffs opening relied critically on using that exhibit to explain events to the jury. In this state of confusion and uncertainty, plaintiff felt little choice but to accept any stipulation defendant provided. Subsequent testimony and review of evidence, including Solitro's testimony to the contrary and close-up photographs, make clear that this stipulation, entered into under such difficult circumstances, is patently contrary to the facts.

Plaintiff does not question defendant counsel's integrity or that they acted in good faith. The law is that regardless, plaintiff should be relieved of a stipulation entered into under circumstances indicating a clear mistake and that creates a manifest injustice. The jury should be entitled to weigh the evidence and determine the truth, without being mislead.

Plaintiff entered into a stipulation regarding Exhibit 18 and 18a, a chart with an overlay depicting the scene of the Young shooting, only minutes before providing an opening statement on October 7, 2003. Exhibit 18 and 18a is a chart with an overlay that was prepared by the Attorney General's office based on crime scene measurements taken January 28, 2000 at Fidas Restaurant, and that had been used throughout the depositions in this case without objection. Plaintiff believed that defendants had already stipulated to that Exhibit. Plaintiff and defendant met prior to the Sept. 19 pre trial conference, and plaintiff believed had agreed to a typed list of exhibits, including Exhibits 18 and 18a. Moreover, it was defendant that included in its list of exhibits photos of the scene, including Exhibit 140 to which they now object. Plaintiff relied on what it thought was defendants' stipulation made weeks before trial, and had prepared her entire opening around Exhibit 18 and 18a. Without a visual aide depicting the scene, the jury would have difficulty understanding the positioning of the various actors, especially Solitro.

Defendant informed plaintiff on the day of jury selection, October 7, 2003, that they were not agreeing to Exhibit 18 and 18a. Defendant for the first time informed plaintiff that based on two photographs, Exhibits X and Y, that they believe the Camaro might have been located further to the right of Fidas restaurant. Plaintiff tried to explain to the Court that any issue as to the consistency of the photos with each other and with the diagram goes to weight, and that defendant had previously agreed to plaintiff using the chart. The Court told plaintiff that the Exhibit could only be used in openings if stipulated to.

Where the photographs seemed inconsistent, on October 7, the night before

---

**2.** Plaintiff is filing this corrected memorandum of law, which does not alter the substance of the earlier memorandum, but makes minor changes of wording and style and adds the following new information. After filing this memorandum, counsel for the plaintiff and defendant spoke. There was a telephone conversation about September 25 or September 26 between counsel for the plaintiff and counsel for the defendant after the receipt of the television tape of the incident, during which counsel for the defendant indicated his intention to make a photograph from the television tape and indicated that the tape in his mind might call into question the previous depictions of the event. Whether correctly or not, plaintiff did not understand that conversation to mean that there would not be agreement to the admissibility of Exhibits 18 and 18a.

opening statements, plaintiff suggested a compromise, and proposed a stipulation stating that there was conflicting evidence as to the accuracy of Exhibit 18. Plaintiff proposed a stipulation stating:

> Exhibit 18 is a diagram of the scene at Fidas Restaurant prepared by a law enforcement agency other than the Providence Police Department and was used in the questioning of witnesses in a prior proceeding and in depositions in this case. Exhibit 121 is a photograph made from a video tape made by television news of the scene on the night of the occurrence. The comparison of the photograph and the diagram depicted in Exhibit 18 indicates that the Camaro is further to the right of the entrance to Fidas as one faces Fidas, than depicted in the diagram.

Defendants did not respond that night to plaintiff's stipulation. Instead, on October 8, minutes before the opening was to begin, defendants counsel informed plaintiff he would not sign the compromise stipulation, though plaintiff pointed out that Exhibits 137–140 appeared to indicate Exhibit 18 and 18a was accurate. The Court instructed plaintiff again that the exhibit could only be used under stipulation. Plaintiff again attempted to explain the confusion, but was instructed she had to stipulate. Facing no choice but to agree to whatever stipulation defendant insisted upon, and literally facing a last minute choice, also fearing the jury would be utterly confused by any description of the events of Jan. 28, 2000 without reference to some easy to understand diagram of the scene, plaintiff signed what defendant provided. Plaintiff signed a stipulation, stating:

> Exhibit 18a is a diagram of the scene at Fidas Restaurant prepared by a law enforcement agency other than the Providence Police Department and was

used in the questioning of witnesses in a prior proceeding and in depositions in this case.

The parties have agreed that at the time of the shooting, the silver Camaro was actually located so that its right front fender was lined up with the far right-hand pole (as you look at Fidas) that is located in front of the foyer to Fidas Restaurant.

Again, at this time, plaintiff believed defendants' photos were unclear, but attributed no significance to defendant's assertion. Since that time, however, it is clear from Exhibits 137–140 and testimony (before trial) of Solitro and others that Exhibit 18 and 18a is accurate. Upon examination, plaintiff has found that clear photographs taken minutes after Cornel Young's shooting show the Camaro next to the first pole outside the door to Fidas, and not all the way to the right, by the third pole. *See* Exhibits 138, 139, 140. Again, each of those photographs, were ones *defendants* included on their exhibit list on September 19, 2003.

Further, maintaining this stipulation is particularly inappropriate where plaintiff is already entitled to question Solitro on this precise issue. Solitro specifically testified at the grand jury that the Attorney General's chart is accurate as to the position of the Camaro. Solitro stated:

Q: Now, you obviously then see that vehicle drawn in already on the diagram, correct?

A: Yes.

Q: Does that vehicle correspond to your recollection of where the vehicle was that this man was headed for?

A: To the best of my knowledge, that's where the—the silver Camaro was placed.

Q: OK. In your own memory, do you have any difference in your mind about

either the position of the car, left or right, whether it's too far or too close to the restaurant, whether it should be on less or more of an angle, or is that how you remember it?

A: That's how I remember it.

Solitro, Grand Jury at p. 33. In light of this evidence, it is evident the stipulation was entered under a clear mistake and that it would be unjust not to relieve the parties of it.

The jury should not have to labor under such a "clear mistake" and feel it has to weigh this evidence as against the Stipulation regarding Exhibit 18. The jury will only be confused. The jury is entitled to weigh all of the evidence, including witness testimony and Solitro's testimony, Exhibits X and Y and Exhibits 138, 139, and 140 taken close to the Camaro.

Defendants are free to advance their theory in the face of facts to the contrary. No prejudice exists if the parties are relieved from the stipulation. After all, until the night before openings, plaintiffs believed defendants had agreed to using not just Exhibit 18 and 18a, but to the photos to which they now object. While plaintiff relied on being able to use Exhibit 18, defendant could not have relied on being able to obtain a last-minute stipulation just before openings.

A stipulation is not in any way "absolute." *T I Federal Credit Union v. Del-Bonis*, 72 F.3d 921, 928 (1st Cir.1995). It is a commonplace that "In our judicial system, [s]tipulations fairly entered into

are favored. Factual stipulations tend to expedite a trial and eliminate the necessity of much tedious proof." *Id.* (citations omitted, quoting *Burstein v. United States*, 232 F.2d 19, 23 (8th Cir.1956)). Plaintiff appreciates the convenience of stipulating to evidence that is cumulative and that is truly not in dispute. Stipulations are intended to make a jury's job easier by eliminating extraneous evidence. They are not permitted to mislead the jury as to crucial matters. There is no question that the location of the Camaro in relation to the blood pool where Cornel Young, Jr. fell is not "tedious proof" but is instead critical as to where Cornel Young was standing when shot, whether he could have been walking, and what his actions were just prior to being shot. This evidence is in no way undisputed or extraneous.

A manifest injustice would result if plaintiff is required to be bound by a stipulation, entered into under such circumstances indicating clear mistake, and where the stipulation is so contrary to the facts which are so critical the jury's decision in this case.

Learning during a trial that a stipulation is contrary to the facts and "clearly mistaken". creates a manifest injustice making relief proper.[3] As the First Circuit has explained:

> Case law is clear that "a stipulation of counsel originally designed to expedite the trial should not be rigidly adhered to when it becomes apparent that it may

---

**3.** Where parties did not discover until five days into trial that a person stipulated to be a registered nurse was in fact not registered, it trial court properly to relieved plaintiff of stipulation; "the manifest injustice to plaintiffs of having to proceed on the basis of a clearly mistaken stipulation as to such an important factual matter warranted the exercise of the trial court's discretion under Rule

16 of the Federal Rules of Civil Procedure." *Stahlin v. Hilton Hotels Corp.*, 484 F.2d 580, 584 (7th Cir.1973). See *Central Distributors, Inc. v. M.E.T., Inc.*, 403 F.2d 943, 946 (5th Cir.1968) ("A stipulation of counsel originally designed to expedite a trial should not be rigidly adhered to when it becomes apparent that it may inflict manifest injustice upon one of the subscribers thereto.")

inflict a manifest injustice upon one of the contracting parties." *Id.* [*Marshall v. Emersons Ltd.*, 593 F.2d 565] at 568 [(4th Cir.1979)]. Parties will usually be relieved of their stipulations where it becomes evident that "the agreement was made under a clear mistake." *Brast v. Winding Gulf Colliery Co.*, 94 F.2d 179, 180 (4th Cir.1938).

*DelBonis*, 72 F.3d at 928. "Even when stipulations concern facts rather than law, courts traditionally retain the power to relieve parties from them on terms that are just." *U.S. v. Teeter*, 257 F.3d 14, 27 (1st Cir.2001). As Judge Boudin has explained, the rule as to relieving parties from a stipulation is "in a nutshell, that good reason must exist and that relief must not unfairly prejudice the opposing party or the interests of justice." *American Honda Motor Co. v. Richard Lundgren, Inc.*, 314 F.3d 17, 21 (1st Cir.2002).

Indeed, none other than Chief Justice John Marshall has held:

> But this court is also of opinion that if the agreement was made under a clear mistake, the claimants ought to be relieved from it, where it could be done without injury to the opposite party. If a judgment be confessed under a clear mistake, a court of law will set that judgment aside.

*The Hiram*, 14 U.S. (1 Wheat.) 440, 4 L.Ed. 131 (1816).[4]

Further, stipulations are understood in contract law terms. "As in contract law though, rules limiting litigants to trial stipulations are not absolute." *DelBonis*, 72 F.3d at 928. Here the stipulation was not entered into based on compromise and fair bargaining. Defendants changed their position, or at least that is plaintiff's perception, at the last moment. Under the circumstances, plaintiff had no choice but to sign a stipulation, without any chance to review the photographs at issue.[5]

What is clear now, is that plaintiff can not in good faith stipulate to something that is contrary to the truth. A stipulation may not be entered as to patently untrue facts. Plaintiff respectfully requests permission that the parties be relieved from this stipulation. It has become evident, based upon the facts, that "the agreement was made under a clear mistake." *DelBonis*, 72 F.3d at 928. The purpose of a stipulation is to expedite a trial and to avoid unnecessary proof of peripheral factual matters. However, here, the stipulation is contrary to the facts, and can only present evidence that is inaccurate to the jury. The purpose of a stipulation is to ease and make more efficient presentation of the truth to the jury, not to mislead the jury. The stipulation will inflict an "injustice" on plaintiff, and relieving the parties of it will merely allow the jury to decide; it will not prejudice defendant. Plaintiff knowing now that the stipulation is incorrect, has an obligation to the Court to request relief from it.

Both parties should instead use the photographs stipulated and in evidence, and testimony of witnesses to present facts to the jury. In doing so, the jury can weigh whether the Attorney General's crime

---

**4.** It is to avoid such injustice that Fed. R. Civ. Pro. Rule 16(e) provides a Court with discretion to alter a pretrial order to prevent "manifest injustice." Here, plaintiff thought defendant did agree to the exhibit pre-trial; it was only their about face on the eve of openings that created the injustice. At least, it is plaintiff's perception that she did not understand there was a problem with Exhibits 18 and 18a until the eve of trial.

**5.** 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5194 (1978) ("courts will look at the facts carefully to see that one litigant has not been coerced into the stipulation.")

scene measurements were accurate and where the automobiles were located. The jury will simply be entitled to weigh, as they are always entitled to do, the evidence for themselves, in order to determine the truth.[6]

Thus, based upon the above long standing Supreme Court and First Circuit law; the clearly mistaken circumstances of the stipulation's signing; where plaintiff was confused by the evidence and unlike defendant, misapprehended its significance; and where subsequent evidence shows it is clearly mistaken and will mislead the jury, plaintiff respectfully requests relief from the stipulation as to Exhibit 18.[7]

---

**6.** Michael H. Graham, Handbook of Federal Evidence § 403.1, at 261–62 (4th ed. 1996) ("In evaluating the incremental probative value of the proffered evidence, the fact that the opponent has offered to stipulate or is not disputing the proposition for which the evidence is being offered should be considered. However, the fact that the proposition is not being disputed is not alone dispositive; the proponent of the evidence is entitled to have the court also consider the fair and legitimate weight introduction of the evidence would have upon the trier of fact.").

**7.** For another First Circuit case on point, *see Boston Edison Co. v. Campanella & Cardi Construction, Co.*, 272 F.2d 430, 434 (1st Cir. 1959), where the Court "remand[ed] the case to the district court to consider permitting the parties to vacate or amplify their stipulation or to take such other steps as the court may approve." There, the Court reversed because

a stipulation the parties entered into was based on a misapprehension, and would not "ensure a just result." *Id.* at 433. The parties, in a tort action regarding damage to two utility poles, stipulated that "the Department of Public Works 'knew or should have known that excavating the peat and replacing it with stones and gravel in large quantities would cause the peat to move which would, in turn, move the plaintiff's poles." *Id.* at 432. However, this stipulation was not dispositive and found to be misleading to a jury; it implied that the damage to the telephone poles was inevitable and was avoidable. This inference was harmful, because under tort law, the defendant had no obligation to use alternative means of excavation that were economically impractical. Thus, the parties there clearly "failed to realize the dimensions of the problem" and the Court relieved the parties of the stipulation. *Id.* at 433.